1  FRANK N. DARRAS #128904, fdarras@sbde-law.com
2  LISSA A. MARTINEZ #206994, lmartinez@sbde-law.com
   SHERNOFF BIDART DARRAS ECHEVERRIA, LLP
3  3257 East Guasti Road, Suite 300
   Ontario, CA  91761
4  Telephone:   (909) 390-3770
   Facsimile:    (909) 974-2121
5

6  Attorneys for Plaintiff

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10
   CARMEN Y. PULLEY,                     Case No.: C08-03628
11
                Plaintiff,               COMPLAINT FOR BENEFITS UNDER
12                                       A GROUP DISABILITY EMPLOYEE
        vs.                              BENEFIT PLAN
13

14  AETNA LIFE INSURANCE COMPANY;
    CONSUMERS POWER COMPANY LTD
15  PLAN,

16              Defendants.
17

18

19      Plaintiff alleges as follows:

20      1.      This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1337

21  and 29 U.S.C.§1132(a), (e), (f) and (g), of the Employee Retirement Income Security

22  Act of 1974, 29 U.S.C. § 1101, *et seq.* (hereafter "ERISA") as it involves a claim by

23  Plaintiff for Disability benefits under an employee benefit plan regulated and governed

24  under ERISA.  Jurisdiction is predicated under these code sections as well as 28 U.S.C.

25  § 1331 as this action involves a federal question.

26      2.      The events or omissions giving rise to Plaintiff's claim occurred in this

27  judicial district, thus venue is proper here pursuant to 28 U.S.C. §1391(b)(2), and the

28  ends of justice so require.



*(Left margin, vertical text)* SHERNOFF BIDART DARRAS ECHEVERRIA, LLP  LAWYERS FOR INSURANCE POLICYHOLDERS

*(Right side stamp)* ORIGINAL FILED  JUL 29 2008  RICHARD W. WIEKING  CLERK, U.S. DISTRICT COURT  NORTHERN DISTRICT OF CALIFORNIA  OAKLAND

1     3.     The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of

2 the Secretary of Labor, provides a mechanism for internal appeal of benefit denials.

3 Those avenues of appeal have been exhausted.

4     4.     Plaintiff is informed and believes and thereon alleges that Defendant,

5 CONSUMERS POWER COMPANY LTD PLAN, is an employee welfare benefit plan

6 established and maintained by Consumers Power Company, its affiliates and

7 subsidiaries (which, Plaintiff alleges upon information and belief, do business in the

8 State of California), to provide its employees, including Plaintiff, with income protection

9 in the event of a disability, and, is the Plan Administrator.

10     5.     Plaintiff alleges upon information and belief that Defendant, AETNA LIFE

11 INSURANCE COMPANY ("AETNA"), is, and at all relevant times was, a corporation

12 duly organized and existing under and by virtue of the laws of the State of Connecticut,

13 authorized to transact and transacting the business of insurance in this state, and the

14 Claims Administrator for the Plan.

15     6.     At all relevant times Plaintiff was an employee of Consumers Power

16 Company, its affiliates and/or subsidiaries and/or one of the named Employers in the

17 subject Plan, and a participant in the Plan.

18     7.     In the 1960's, Defendant, AETNA issued Group Long Term Disability

19 Policy 322687-973 to Consumers Power Company to insure its Plan, and the eligible

20 participants and beneficiaries of the Plan, including Plaintiff. That Policy promised to pay

21 disability benefits if Plaintiff, CARMEN Y. PULLEY ("MS. PULLEY") should become

22 disabled. A copy of the Policy is attached hereto as Exhibit "A." Therefore, AETNA

23 suffers from a structural conflict as it funds the plan and decides whether the claimants

24 will receive benefits under the Plan[1].

25

26     [1] Where a plan administrator "both decides who gets benefits and pays for them, … it has a direct

27 financial incentive to deny claims," and therefore "labors under … a conflict of interest." *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 511 F.3d 1206, 1211 (9th Cir. 2008). Pursuant to *Abatie,* "a

28 reviewing court <u>must always</u> consider the 'inherent conflict that exists when a plan administrator both administers the plan and funds it.'" *Saffon*, 511 F.3d at 1211 (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006) (emphasis added). "When reviewing a discretionary denial of

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

8.     After a waiting period as specified in the Plan, the Plan provides for long term disability ("LTD") as follows:

| Term | Provision |
|---|---|
| **Benefit Amount** | The amount of monthly benefit payable under this policy for a given monthly period shall be 60% of the employee's monthly rate of basic earnings if no other income benefits are payable for the given monthly period.

If other income benefits are payable for a given monthly period, the amount of monthly benefit payable under this policy for the given monthly period shall be an amount equal to the excess, if any, of 60% of the employee's monthly rate of basic earnings over the amount of other income benefits payable for the given monthly period.

In no event shall the amount of monthly benefit exceed $5,000. |
| **Total Disability** | Total disability or totally disabled means, during the first thirty-three months of any period of disability, that the employee is unable, solely because of disease or injury or pregnancy-related condition, to work at his own occupation; and, thereafter during the continuance of such period of disability, that the employee is unable, solely because of disease or injury, to work at any reasonable occupation. |

benefits by a plan administrator who is subject to a conflict of interest, [the Court] must determine the extent to which the conflict influenced the administrator's decision and discount to that extent the deference … accorded[ed] the administrator's decision." *Id* at 1212.

9.    On or about November 13, 2001, MS. PULLEY, an office manager, became disabled under the terms of the subject Plan and subsequently submitted a claim to AETNA for payment of disability benefits.

10.    On or about October 8, 2002, AETNA wrote to MS. PULLEY and informed her that it had approved her claim. According to AETNA's letter:

• "We have reviewed your application for long term disability benefits and have determined that, according to your plan, you are now totally disabled from your own occupation."

• "If you are still disabled from your own occupation and eligible for disability benefits on October 9, 2004, your plan requires that you meet a more strict 'any occupation' definition of disability."

• "…you may be contacted by an Aetna representative regarding our…Social Security Advocacy Attorney Referral Assistance Program."

• "The assistance program is voluntary and is of no cost to you."

• "…we have arranged with ALLSUP Incorporated, a Social Security advocacy firm, to call and assist you with your Social Security application."

• "These services will be provided at no cost."

11.    On or about June 24, 2004, the Social Security Administration, by and through an Administrative Law Judge ("ALJ"), determined that MS. PULLEY was disabled. According to the ALJ's Decision:

• "A hearing was…held on June 2, 2004…"

• "The claimant alleges disability beginning November 13, 2001 due to severe degenerative changes to multiple levels of her cervical spine coupled with chronic pain…"

• "Ms. Pulley has not engaged in substantial gainful activity at any time since the alleged onset date of November 13, 2001…"

• "The claimant suffers from a history of 'severe' impairments…to include intervertebral disc syndrome with an acute exacerbation of chronic, multi-level

1    cervical degenerative disc disease with symptomatology consistent with neural canal

2    stenosis and bilateral intervetebral foraminal narrowing resulting in pain, numbness and

3    weakness in the neck and in the bilateral upper extremities."

4             •      "…the overall medical evidence supports a finding that the claimant

5    retains the residual functional capacity to lift and carry…with no repetitive or strenuous

6    use of the hands and arms bilaterally and no fine manipulation bilaterally…"

7             •      "This assessment is supported by both the consultative orthopedic

8    surgeon, Dr. Philip Wirganowicz, a Diplomate of the American Board of Orthopaedic

9    Surgeons…[as] well as the comprehensive evaluation obtained in connection with her

10   worker's compensation claim by Dr. Cedric A. Holley, D.C.…."

11            •      "Both Drs. Wirganowicz and Holley make reference to the MRI of

12   the cervical spine which was performed on January 2, 2002…"

13            •      "This is interpreted as showing multilevel degenerative disk disease

14   with associated neural foraminal narrowing."

15            •      "These changes are most severe at the C4-5 [level] where there is

16   a large posterior disk-osteophyte complex with a more focal central component which

17   impacts upon and displaces the cord posteriorly."

18            •      "There is apparent thinning of the cord in this region…"

19            •      "Based on the consistent medical findings which do exist in the

20   record and particularly the underlying MRI evidence of severe degenerative disc

21   disease at the C4-5 with displacement of the spinal cord, I find the claimant's allegations

22   of chronic pain in her upper extremities and an inability to use her hands in a sustained

23   manner to be credible…"

24            •      "At the hearing, I asked Mr. Velton the vocational expert whether an

25   individual with the claimant's vocational profile…would be able to engage in any of her

26   past relevant work."

27            •      "He responded that all of her past jobs required good bimanual

28   dexterity and manipulation."

- 5 -

1    •    "In view of this, she would not be able to perform any of her past

2    work, there would be no transferable job skills because she could not use them with the

3    impaired level of both of her hands, and lastly Mr. Velton was of the opinion that this

4    combination of exertional and non-exertional limitations would totally erode the unskilled

5    occupational bases at both the sedentary and light levels of exertion…There would not

6    be any competitive work that could be performed."

7    •    "Work which [s]he is able to perform does not exist in significant

8    numbers in the national or regional economies."

9    •    "The claimant has been under a disability…since November 13,

10    2001[2]."

11    ▪    (NOTE: Based upon information and belief, Plaintiff alleges that

12    Allsup was retained by AETNA to secure social security benefits for

13    MS. PULLEY, and represented MS. PULLEY at the hearing.

14    Therefore, Plaintiff alleges at all relevant times herein, Allsup was

15    acting as an agent of AETNA in proving MS. PULLEY's disability

16    and her inability to work in any gainful employment[3], which is

17    essentially the same as "any reasonable occupation" under the

18    terms of the Plan.)

19    12.    Approximately one (1) month after the Social Security disability

20    determination, on or about July 27, 2004, AETNA had MS. PULLEY go through a

21    Functional Capacity Evaluation which further substantiated her disability. According to

22    _____

23    [2] According to the Social Security definition of disability, which is more stringent than the subject Plan's

24    Disability definition: "A person is disabled, and thereby eligible for Social Security disability insurance benefits and Supplemental Security Income (SSI), "only if his physical or mental impairment or

25    impairments are of such severity that *he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work*

26    *which exists in the national economy.*" 42 U.S.C. §§423(d)(2)(A), 1382c(a)(3)(B) (emphasis added).

27    [3] Based upon information and belief, Plaintiff alleges that on or about August 19, 2004, Allsup submitted an invoice to AETNA for payment of $2,650 as a result of obtaining the Social Security award on

28    AETNA's behalf. The description of services was listed as "Social Security Representation and Overpayment Recovery."

1    the findings of this exam, which was done on AETNA's behalf:

2         •    "This testing is used to determine a client's ability to perform

3    specific job related tasks or to determine work restrictions or limitations."

4         •    "This comprehensive testing procedure measures a client's overall

5    function, including the ability to grip with the right and left hand, as well as the

6    performance of fine and gross motor work."

7         •    **SUMMARY**:

8              ▪    "Ms. Pulley has significant limitations in range of motion, strength

9                   and activity endurance related to her cervical disorder, and she also

10                  has a right knee disorder."

11             ▪    "She is…significantly limited in performing computer and desk

12                  work."

13             ▪    "Her pain levels increase with activity, requiring her to take frequent

14                  rest breaks to reduce her pain."

15        •    **CONCLUSION**:

16             ▪    "Test results indicate that Ms. Pulley is not physically able to

17                  perform the duties associated with her previous position."

18             ▪    "She does not have the physical capabilities to…type or write for

19                  any length of time."

20             ▪    "She is also incapable of sitting, standing or walking for prolonged

21                  periods."

22        13.    However, after having paid disability benefits for approximately two and a

23   half years, AETNA, on or about January 8, 2005, unreasonably, arbitrarily and

24   capriciously denied MS. PULLEY further benefits under the terms of the subject Plan.

25        14.    In so doing, AETNA relied, in large part, upon the medical report of Aubrey

26   A. Swartz, M.D., a highly conflicted physician. This is the same physician who was

27   involved in the case of *Joan Hangarter v. Provident*, a 2004 California case in which the

28   court stated the following:

SHERNOFF BIDART
DARRAS ECHEVERRIA³
LAWYERS FOR INSURANCE POLICYHOLDERS

1      • "Caliri [Plaintiff's claim expert] testified that when an insurer "use[s]

2   the same [IME] on a continual basis," the medical examiner becomes "biased" because

3   they "lose their independence." Similarly, evidence showed that in thirteen out of

4   thirteen cases involving claims for total disability, Dr. Swartz rejected the insured's claim

5   that he or she was totally disabled."

6            ▪ (NOTE: The overuse of a highly conflicted physician such as Dr.

7               Swartz will further heighten the level of skepticism with which a

8               court views AETNA's conflicted administrator's decision in this

9               matter as stated under *Abatie v. Alta Health & Life Insurance Co.*,

10              458 F.3d 955 (9th Cir. 2006).)

11     15.    On or about June 14, 2005, Cedric A. Holley, D.C., whose findings and

12   opinions AETNA's Social Security agent, Allsup, used to gain Social Security benefits,

13   wrote the following letter to AETNA to continue to certify MS. PULLEY's disability:

14     • "...Ms. Pulley is clearly disabled per Aetna's definition of

15   disability..."

16     • "The MRI of the cervical spine performed on 1/02/02 displayed

17   significant degenerative disc disease with nerve root displacement."

18     • "Recent x-rays taken on 3/1/05 of the cervical region confirm that

19   this pathology is still present and has progressed."

20     • "An MRI of late taken of the lumbar spine shows hypertrophic

21   spurring at several spinal levels."

22     • "These findings are consistent with the patient's subjective

23   complaint, which include chronic pain [in] the neck, shoulders, arms and hands as well

24   as the thoracic and lumbar spine."

25     • "As a result of subjective and objective factors, Ms. Pulley has

26   impairment in her ability to lift, sit, stand and walk."

27     • "The mere fact that she was able to stand and walk for

28   approximately 30 minutes does not indicate that she would be able to perform the daily

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

1   requirements of a steady job."

2   &bull;   "…I believe that she does have the capacity to stand and walk for a

3   few hours per day, however, it would be my belief that if she were required to stand, sit,

4   lift and walk in excess of three hours a day, the increase in subjective complaints would

5   render her unable to maintain a consistent work schedule."

6   &bull;   "I would anticipate frequent days missed due to pain and

7   discomfort."

8   &bull;   "Moreover, I believe that any job that she would have to perform

9   would have to include the ability to lie down at will."

10  &bull;   "The vocational consultant referenced in the termination

11  letter…said that Ms. Pulley could perform the requirements of certain job

12  descriptions…However…not only are these jobs very similar to her previous

13  occupation…which she can no longer perform, but more importantly, all of these job

14  descriptions have physical requirements that exceed her tolerances."

15  &bull;   "Furthermore, any requirement for dexterity and manipulation would

16  not be able to be accomplished by Ms. Pulley for any protracted period of time."

17  &bull;   "…I cannot envision her performing any position that requires

18  prolonged or repetitive use of the upper extremities."

19  &bull;   "…the FCE of Health-Pro dated 7/27/04 further supports Ms.

20  Pulley's condition."

21  16.   However, instead of paying the benefits to which MS. PULLEY is entitled,

22  on or about September 23, 2005, AETNA unreasonably, arbitrarily and capriciously

23  upheld its prior denial of benefits.

24  17.   To date, even though MS. PULLEY has been, and remains, disabled, as

25  evidenced by the medical documentation, Defendants have not paid MS. PULLEY any

26  disability benefits from on or about December 31, 2004. The arbitrary and capricious

27  nature of Defendants' denial decision is evidenced by, but not limited to, the following:

28  &bull;   AETNA engaged in procedural violations of its statutory obligations

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

1    under ERISA, including, but not limited to, failing to advise MS.

2    PULLEY of what specific documentation it needed from her to perfect

3    her claim and failing to provide a complete copy of all documents,

4    records, and other information relevant to her claim despite a request

5    by Plaintiff in violation of 29 C.F.R. Section 2560.530-1(h)(2)(iii);

6    •    AETNA did not give proper weight to the Social Security

7    Administration's finding that MS. PULLEY was disabled from any

8    occupation[4], a finding which was obtained through the efforts of

9    AETNA's own retained agent, Allsup.

10   •    AETNA ignored the obvious, combed the record and has taken

11   selective evidence out of context as a pretext to deny Plaintiff's claim;

12   •    AETNA had the file reviewed by physicians that are financially

13   conflicted; and,

14   •    AETNA ignored the opinions of MS. PULLEY's treating physicians.

15   Deference should be given to the treating physician's opinions as there

16   are no **specific**, **legitimate** reasons for rejecting the treating

17   physician's opinions which are based on **substantial evidence** in the

18   claim file.  Further, AETNA's **physician's** opinions do not serve as

19   **substantial evidence**, as they are not **supported by evidence** in the

20   claim file nor are they **consistent with the overall evidence** in the

21   claim file.

22       18.    For all the reasons set forth above, the decision to deny disability

23   insurance benefits was arbitrary, capricious, wrongful, unreasonable, irrational, sorely

24   contrary to the evidence, contrary to the terms of the Plan and contrary to law. Clearly,

25   AETNA abused its discretion in deciding to deny this claim as the evidence shows its

26   denial decision was arbitrary and capricious. Further, AETNA's denial decision and

27

28

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

1   actions heighten the level of skepticism with which a court views a conflicted

2   administrator's decision under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955

3   (9th Cir. 2006).

4        19.    As a direct and proximate result of the Defendants' failure to provide MS.

5   PULLEY with disability benefits, MS. PULLEY has been deprived of said benefits from

6   on or about December 31, 2004, to the present date.

7        20.    As a further direct and proximate result of the denial of benefits, MS.

8   PULLEY has been required to incur attorney fees to pursue this action, and is entitled to

9   have such fees paid by defendants pursuant to 29 U.S.C. § 1132(g) (1), ERISA § 502(g)

10   (1).

11        21.    A controversy now exists between the parties as to whether MS. PULLEY

12   is disabled as defined in the Plan. Plaintiff seeks the declaration of this Court that she

13   meets the Plan definition of disability and thus she is entitled to benefits from the Plan.

14   In the alternative, Plaintiff seeks a remand to the Plan Administrator for a determination

15   of Plaintiff's claim consistent with the terms of the Plan.

16      WHEREFORE, Plaintiff prays for relief against Defendants as follows:

17        1.    An award of benefits in the amount not paid MS. PULLEY from on or

18   about December 31, 2004, to the date of judgment herein, together with interest at the

19   legal rate on each monthly payment from the date it became due until the date it is paid,

20   including, but not limited to, prejudgment interest at the rate of 10% pursuant to the

21   section 10111.2 of the California Insurance Code; or, in the alternative, a remand to the

22   Plan Administrator for a determination of Plaintiff's claim consistent with the terms of the

23   Plan;

24        2.    An order determining that MS. PULLEY is entitled to payments so long as

25   she remains disabled as defined in the Plan;

26        3.    An order requiring AETNA to pay $110 a day, from the date first

27

28   [4] A Plan administrator may not arbitrarily disregard a favorable ruling by the Social Security Administration as, at a minimum, it provides support for the conclusion that an administrative agency charged with

SHERNOFF BIDART
DARRAS ECHEVERRIA
LAWYERS FOR INSURANCE POLICYHOLDERS

1   requested, for each day in which AETNA failed or refused to comply with Plaintiff's

2   requests for information which AETNA was required, by statute/regulation, to furnish

3   pursuant to ERISA section 502(c) [29 USC sec. 1132(c)].

4       4.      For reasonable attorney fees incurred in this action; and

5       5.      For such other and further relief as the Court deems just and proper.

6

7   DATED:  July 25, 2008                    SHERNOFF BIDART DARRAS
                                             ECHEVERRIA, LLP
8

9

10                                           FRANK N. DARRAS
                                             Attorney for Plaintiff
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

examining MS. PULLEY's medical records found objective support for its favorable decision.

COMPLAINT

Group Control No. 322687-973

COPY

# Aetna Life Insurance Company

## Hartford, Connecticut

COPY B

VERIFIED

(Herein called the Insurance Company)

Group Policy No.:  LTD-322687-973

Policy Delivered In:  Michigan

(State or other Jurisdiction)

Policyholder:   CONSUMERS POWER COMPANY

Policy Signed:  May 12, 1969

To Take Effect:  May 1, 1967

This policy is a contract between the Policyholder and the Insurance Company and shall be construed in accordance with the law of the jurisdiction in which it is delivered.

In consideration of the payment by the Policyholder of premiums in the amounts and at the times hereinafter provided, the Insurance Company hereby agrees with the Policyholder, subject to the terms appearing on this and the following pages of this policy (including, if any, the riders, endorsements, and amendments, to this policy which are signed by the Insurance Company), to pay benefits in accordance with the terms of this policy. The obligations and the rights of all persons under this policy shall be determined in accordance with the terms of this policy.

In witness whereof the Insurance Company has signed this policy at Hartford, Connecticut.

_____
Secretary

_____
President

_____
Registrar

Countersigned at _____, _____ 19_____

by_____

Licensed Resident Agent

000013

GROUP INSURANCE POLICY
LONG TERM DISABILITY BENEFITS

EXHIBIT A

03-73966-3LTD

# I N D E X

|  | Page |
|---|---|
| Article I—GENERAL PROVISIONS | 3 |
| Article II—BENEFITS | 6 |
| Article III—TERMINATION OF INSURANCE | 7 |
| Article IV—PREMIUMS | 8 |
| Article V—DISCONTINUANCE OF POLICY | 9 |
| Article VI—MISCELLANEOUS PROVISIONS | 10 |

COPY OF APPLICATION

000014

EXHIBIT  A

322087

## Article I--GENERAL PROVISIONS

Section 1.  Definitions

As used in this policy:

(a) The term "date of issue" means the date this policy took effect as shown on Page 1 of this policy.

(b) Commencing January 1, 1980 "policy anniversaries" shall be deemed to occur on said date and on the same day in each succeeding year.

(c) The term "policy year" means a period commencing with the date of issue of this policy, or a policy anniversary, and terminating immediately prior to the next succeeding policy anniversary.

(d) A "policy month" shall commence on the date of issue.  Each "policy month" thereafter shall be deemed to commence on the same day of the calendar month.

(e) "Contributory insurance" means insurance for which an employee makes written request to his Participant Employer and agrees to make the required contributions to his Participant Employer.  "Non-contributory insurance" is insurance for which an employee does not make written request nor contribute toward the cost.  This policy provides insurance on the contributory basis.

(f) "Monthly rate of basic earnings" does not include bonuses, overtime pay, and other extra compensation.  The monthly rate of basic earnings of a disabled employee shall be deemed to be the monthly rate in effect on the day immediately preceding the date of commencement of the period of disability.  A retroactive change in an employee's rate of earnings made while the employee is disabled shall be disregarded.

(g) "The prior plan" is the plan carried or sponsored by Consumers Power Company and Michigan Gas Storage Company which provided monthly sickness indemnity and monthly accident indemnity for long term disabilities and which was replaced by the benefits provided in this policy.

000015

EXHIBIT A

## Article I—GENERAL PROVISIONS (Continued)

*Section 2.  List of Participant Employers*

An Employer shall be eligible to be included in this list as a Participant Employer if such inclusion is not contrary to any applicable insurance law of the state or other jurisdiction in which this policy is delivered.

The Policyholder may act for and on behalf of any and all of the Employers included in this list in all matters pertaining to this policy, and every act done by the Policyholder, agreement made between the Insurance Company and the Policyholder, or notice given by the Insurance Company to the Policyholder or by the Policyholder to the Insurance Company, shall be binding on all such Employers.

Any eligible Employer may be added to this list as a Participant Employer only upon written agreement between the Policyholder and the Insurance Company and upon terms mutually agreeable to them.

An Employer shall be eliminated automatically from this list when this policy is discontinued with respect to employees of such Employer, as provided for elsewhere in this policy, but termination of an Employer's status as a Participant Employer shall not relieve such Employer from any obligations to the Insurance Company with respect to the time such Employer was a Participant Employer under this policy.

| Name of Participant Employer | Principal Location | Effective Date of Inclusion |
|---|---|---|
| Consumers Power Company | Jackson, Michigan | Date of Issue |
| Michigan Gas Storage Company | Jackson, Michigan | Date of Issue |
| Northern Michigan Exploration Company | Jackson, Michigan | September 1, 1974 |
| Plateau Resources Limited | Jackson, Michigan | January 1, 1977 |

000016

EXHIBIT A

Article I--GENERAL PROVISIONS (Continued)    322687

Section 3.  Employees to be Insured

A. Employees Eligible:

The following class of employees shall be eligible for insurance under this policy:

All full-time Executive, Administrative and Professional employees of a Participant Employer who are at least twenty-five years of age, but who have not reached the first day of the calendar month next following the date of attaining the age of sixty-nine years and three months, excluding, however, any employee permanently assigned to work outside of the United States and Canada.

For the purposes of this policy, a "full-time employee" is one who is regularly scheduled to work at least thirty-hours per week during his Participant Employer's work week.

Each employee in an eligible class shall become eligible for insurance on the date on which he completes two years of continuous service since the date he was last employed by a Participant Employer; provided, however, that each employee in an eligible class of Plateau Resources Limited, whose employment commenced on or before the date Plateau Resources Limited was included as a Participant Employer, shall become eligible for Employee Coverage on that date; provided further, however, that each other employee of Plateau Resources Limited shall become eligible for Employee Coverage on the day he becomes a member of the eligible class of employees.

Each employee in an eligible class who is an Officer, including an Assistant Officer, whose employment commences after March 1, 1973, shall become eligible for insurance on the later to occur of

(a) March 1, 1975, or

(b) the date on which he enters the service of a Participant Employer.

Anything to the contrary notwithstanding, if an individual is in the employ of or connected with two or more Participant Employers, he shall not be eligible for multiple coverage under this policy, but shall be treated the same as if he were in the employ of or connected with a single Participant Employer; the amount of insurance for which any such individual shall be eligible under this policy shall under no circumstances exceed the amount which would apply if all of the Participant Employers with which he is employed or connected were a single Participant Employer and if the aggregate of the remuneration being paid to him by all such Participant Employers were being paid to him by a single Participant Employer.

If any Participant Employer is a partnership, the natural-person partners thereof shall be considered to be employees within the meaning of this policy if and while they are actively engaged in and devoting their time on a substantially full-time basis to the conduct of the business of the partnership.  If any Participant Employer is an individual proprietorship, the natural-person proprietor thereof shall be considered to be an employee within the meaning of this policy if and while he is actively engaged in and devoting his time on a substantially full-time basis to the conduct of the business of the proprietorship.



Article I—General Provisions (Continued)

Section 3.  Employees to be Insured (Continued)

B.  Effective Dates of Insurance:

Each employee who makes written request to a Participant Employer for insurance and agrees to make the required contributions therefor to such Participant Employer is to be insured on the date he becomes eligible or on the date he makes such request, whichever is later; provided, however, that

(a) the insurance of any employee who makes such written request after thirty-one days from the date he becomes eligible, or who revokes any written request previously made, shall become effective only if and when the Insurance Company gives its written approval of such evidence of insurability as it may reasonably require;

(b) if an employee is not actively working for a Participant Employer in the class of employees eligible for insurance under the group policy on the date he would otherwise become insured in accordance with any of the foregoing provisions, his insurance will not become effective until he is actually working for a Participant Employer on a full-time basis in such class.

000018

EXHIBIT A

Article III — GENERAL PROVISIONS (Continued)          322687

*Section 4.   Changes in the Plan of Insurance*

The amendments to this policy which become effective on     September 1, 1981, shall not apply in respect of any benefits payable for a period of total disability, whether continuous or interrupted, which commenced on or before said date.

000019          EXHIBIT A

GR-33 LTD
Ed. 4-'66                    Page 5-C          9 1 81          40680

Article II--LONG TERM DISABILITY BENEFITS

322687

Section 1.  Definitions

As used in this Article:

(a) "Approved rehabilitation program" means only

    (i) a program of vocational rehabilitation, whether formal or informal, or

    (ii) a period of part-time work for purposes of rehabilitation,

which the Insurance Company approves in writing, and which shall be considered to begin only when the Insurance Company gives its approval thereto and to end when the Insurance Company withdraws such approval.

(b) While an approved rehabilitation program is applicable to an employee, "monthly rate of basic earnings", in respect of any month, means the excess, if any, of item (i) over item (ii):

    (i) the monthly rate of basic earnings of the disabled employee determined on the basis of the terms of this policy, exclusive of this item (b);

    (ii) the amount, if any, of remuneration the employee earns for work performed during such month in connection with the approved rehabilitation program.

(c) "Reasonable occupation", as to any employee, means any gainful activity for which the employee is, or may reasonably become, fitted by education, training, or experience, but shall not mean any such activity if it is in connection with an approved rehabilitation program.

(d) "Total disability" or "totally disabled" means, during the first thirty-three months of any period of disability, that the employee is unable, solely because of disease or injury or pregnancy-related condition, to work at his own occupation; and, thereafter during the continuance of such period of disability, that the employee is unable, solely because of disease or injury, to work at any reasonable occupation.

(e) A "period of total disability" of an employee shall be deemed to commence on the later to occur of

    (i) the first day that the employee is totally disabled, and

    (ii) the thirty-first day immediately preceding the date the employee was, during the period of disability, first seen and treated personally by a legally qualified physician in connection with the disease, injury or pregnancy-related condition which caused such disability;

and the period of total disability shall be deemed to terminate on the earliest to occur of

    (i) the date the employee is no longer totally disabled;

    (ii) the date upon which the employee commences work at a reasonable occupation;

    (iii) the date the employee fails to furnish proof of the continuance of total disability, or refuses to be examined, when required in accordance with Article VI;

Article II—LONG TERM DISABILITY BENEFITS (Continued)         322687

Section 1.  Definitions (Continued)

(iv) the date the employee ceases to be under the care of a legally qualified physician;

(v) as to a period of total disability that commences prior to the date the employee attains the age of fifty-nine years, the end of the calendar month in which such employee attains the age of sixty-five years;

(vi) as to a period of total disability that commences on or after the date the employee attains the age of fifty-nine years, the expiration of the number of months of total disability (including the qualifying period), as determined from the Table below:

TABLE

Age When Period Of Total
Disability Commences

| Years Of Age | Months of Age | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| | | | | | Months Of Total Disability | | | | | | | |
| 59 | 72 | 71 | 70 | 69 | 68 | 67 | 66 | 66 | 65 | 65 | 64 | 64 |
| 60 | 63 | 63 | 62 | 62 | 61 | 61 | 60 | 60 | 59 | 59 | 58 | 58 |
| 61 | 57 | 57 | 56 | 56 | 55 | 55 | 54 | 54 | 53 | 53 | 52 | 52 |
| 62 | 51 | 51 | 50 | 50 | 49 | 49 | 48 | 48 | 47 | 47 | 46 | 46 |
| 63 | 45 | 45 | 44 | 44 | 43 | 43 | 42 | 42 | 41 | 41 | 40 | 40 |
| 64 | 39 | 39 | 38 | 38 | 37 | 37 | 36 | 36 | 35 | 35 | 34 | 34 |
| 65 | 33 | 33 | 32 | 32 | 31 | 31 | 30 | 30 | 30 | 29 | 29 | 29 |
| 66 | 29 | 28 | 28 | 28 | 28 | 27 | 27 | 27 | 27 | 26 | 26 | 26 |
| 67 | 26 | 25 | 25 | 25 | 25 | 24 | 24 | 24 | 24 | 23 | 23 | 23 |
| 68 | 23 | 22 | 22 | 21 | 20 | 19 | 18 | 17 | 16 | 15 | 14 | 13 |
| 69 | 12 | 11 | 10 | 9 | 8 | 7 | 6 | 5 | 4 | 3 | 2 | 1 |

(vii) the date of the employee's death.

(f) Any two separate periods of total disability which arise from the same or related causes and which are separated by less than six months of active work shall be considered as one period of total disability, except that the earlier of such separate periods shall not be taken into account if at the beginning of such earlier period the employee was not insured under this policy.  Having combined two separate periods into a single period, the foregoing rule may be applied successively to any further separate period of total disability provided such further separate period of disability also arises from the same or related causes and is not separated from the last preceding such period by more than six months of active work.  See item (g) below for an exception to this rule during the "qualifying period".

GR-73966 SMLTD                    Page 6-A                    1 1 79

EXHIBIT A

322687

Article II--LONG TERM DISABILITY BENEFITS (Continued)

Section 1.  Definitions (Continued)

(g) "Qualifying period" means, as to any one period of total disability of an em-
    ployee, the first 270 days of such period of total disability of the employee.
    Only one qualifying period is required with respect to those periods of total
    disability which are considered as one period of total disability under item
    (f).  During the qualifying period, the period of active work which is required
    to establish a new period of total disability in item (f) shall be thirty-one
    days rather than six months.

GR-73966 SMLTD          Page 6-A (Continued)          1 1 79

000022

EXHIBIT  A

322687

Article II--LONG TERM DISABILITY BENEFITS (Continued)

Section 2.  Income Benefits

A. If a period of total disability of an employee commences while the employee is in-
   sured hereunder and continues during and beyond the qualifying period and if proof
   of loss is furnished in accordance with Article VI, the Insurance Company shall,
   subject to the terms of this policy, pay a monthly benefit during the continuance
   of the period of total disability commencing with the first day following the com-
   pletion of the qualifying period.

   The amount of monthly benefit payable under this policy for a given monthly period
   shall be 60% of the employee's monthly rate of basic earnings if no other income
   benefits are payable for the given monthly period.

   If other income benefits are payable for a given monthly period, the amount of
   monthly benefit payable under this policy for the given monthly period shall be
   an amount equal to the excess, if any, of 60% of the employee's monthly rate of
   basic earnings over the amount of other income benefits payable for the given
   monthly period.

   In no event shall the amount of monthly benefit exceed $5,000.

Section 2.   Income Benefits (Continued)

B.   Other income benefits, referred to above, shall include the following Class I and Class II other income benefits:

CLASS I

(1) The amount of any remuneration the employee receives from any Participant Employer or from any other employer, and the amount the employee receives from any occupation for compensation or profit; excluding, however, for the purposes of this item (1), any such amount attributable to an approved rehabilitation program or to severance or vacation pay in consideration of work performed prior to the commencement of disability.

(2) Any payment under any profit sharing plan of any Participant Employer, but only to the extent that such payment, solely by reason of the employee's disability, exceeds the payment he would have received had he not become disabled and had he terminated employment or withdrawn from such plan as of the date service ceases to be credited to him under such plan.

(3) Any payment under a retirement plan covering employees of any employer which is, or at any time was, a Participant Employer.

(4) Any payment with respect to disability under any group life insurance policy (whether issued by the Insurance Company or any other insurer).

(5) Any payment under any unemployment compensation law or under any other arrangement for payments on account of unemployment.

(6) Any payment, for disability, by reason of past or present service of the employee in the armed forces of a government; provided, however, that if the disability commenced prior to the effective date of the employee's insurance under this policy, only that part of any such payment which results from an increase in the level of payments commencing on or after the effective date of the employee's insurance and which is attributable to an increase in the degree of disability, shall be taken into account, for the purposes of this item (6).

(7) Any payment by reason of early retirement, other than because of disability, including any benefits to which the employee or a dependent of the employee is entitled by reason of the employee's retirement, under the Federal Social Security Act, the Railroad Retirement Act, or any similar act of any national government.

CLASS II

(1) The amount of any benefit provided with respect to disability,

(a) under any group insurance plan or any other arrangement of coverage for individuals in a group, whether on an insured or uninsured basis, and

(b) under any fund or other arrangement, pursuant to any compulsory benefit act or law.

000024

EXHIBIT A

Article II--LONG TERM DISABILITY BENEFITS (Continued)

Section 2.  Income Benefits (Continued)

CLASS II (Continued)

(2)  Disability benefits required or provided for under any law of a government--

For example,

(a)  temporary or permanent, partial or total, disability benefits under
any workers' compensation law or any other similar law, which are
intended to compensate the worker for any one or more of the following

(i)  loss of past and future wages,

(ii)  impairment of earning capacity or diminished ability to
compete in the open labor market, and

(iii)  any degree of permanent impairment or loss of bodily func-
tion or capacity,

(b)  no-fault wage replacement benefits,

(c)  benefits under the Federal Social Security Act, the Canada Pension
Plan, and the Quebec Pension Plan.

For the purposes of this item 2, there shall be included any benefits to
which the employee or his spouse, children, and dependents are entitled by
reason of the employee's disability.

For the purposes of determining other income benefits:

(1)  Any single sum payment made in settlement of a claim for workers' compen-
sation benefits

(a)  will be considered to include disability benefits of 50% of the total
gross amount of such single sum payment, whether such payment is or is
not the result of a compromise, award or judgement, unless there
exists in the terms of the compromise, award, or judgement (or in the
record of the proceeding resulting in such payment) evidence satis-
factory to the Insurance Company that a greater or lesser percentage
should be applied; and

(b)  the amount so determined will be allocated by the Insurance Company,
in equal amounts, to a sixty-month period which shall commence (i) on
the same date as the period with respect to which the single sum
payment is made, or (ii) on the date on which the single sum payment
is made if the compromise, award, or judgement does not allocate the
single sum payment to any specific period.

000025

EXHIBIT A

322687

Article II--LONG TERM DISABILITY BENEFITS (Continued)

CLASS II (Continued)

>    However, the monthly amount determined in accordance with (a) and (b) above
>    will be included as o ther income benefits only to the extent it exceeds 3%
>    of the employee's monthly rate of basic earnings.

>    (2)    Any other single sum payment (including any periodic payments which the
>           individual could have elected to receive in any single sum) shall also be
>           allocated in its entirety by the Insurance Company, in equal amounts, to
>           sixty monthly periods, and may also be allocated retroactively by the
>           Insurance Company if received pursuant to a retroactive award.

>    (3)    The Insurance Company shall have the right to allocate any other periodic
>           payments or an amount which represents an accumulation of past due periodic
>           payments to monthly periods and to make such allocation retroactively when
>           such payments are received pursuant to a retroactive award.

For the purposes of the foregoing item (7) under Class I and item (2) under Class
II of this subsection B. with respect to any period of total disability, other
income benefits shall not include any increase in disability or retirement benefits
under the Federal Social Security Act, the Canada Pension Plan, or the Quebec
Pension Plan which becomes effective during the period of total disability on or
after December 1, 1973, and after the initial award of such benefits, other than to
the extent that the increase is due to a change in the number of the employee's
family members, to an adjustment in the original award or to a change in the
average monthly wage as determined under such Act or Plan.

322687

Article II--LONG TERM DISABILITY BENEFITS (Continued)

Section 3.   Exclusions, Limitations and Other Provisions
             Relating to Long Term Disability Benefits

No insurance is afforded under this policy

(a) as to a disability due to intentionally self-inflicted injuries; or

(b) as to a disability resulting from the commission by the employee of, or an
    attempt by the employee to commit, an assault, battery, or felony; or

(c) as to a disability due to war or any act of war (whether war is declared or
    not); or

(d) as to a disability due to insurrection, rebellion, or participation in a riot
    or civil commotion.


Section 4.  Extension of Benefits

If an employee's insurance terminates during a period of total disability which
commenced while such insurance was in force, any benefits otherwise provided under
this policy will continue to be available during the continuance of such period of
total disability.

1 1 79
EXHIBIT A

Article II--LONG TERM DISABILITY BENEFITS (Continued)

Section 2-S.  Supplemental Income Benefits

A.  If an employee has at some time qualified for monthly benefits under the terms of Section 2 of this Article II, or under the prior plan, or under both, for a period of at least fifty-one consecutive months and if, on the date he reaches Normal Retirement Date, he meets at least one of the following requirements:

  (i) he is employed by a Participant Employer, or

  (ii) he is entitled to receive a monthly benefit under Section 2 of this Article II for the month in which he reaches Normal Retirement Date, or

  (iii) he is eligible to receive a pension or annuity under his Participant Employer's formal Pension Plan;

the Insurance Company shall pay a monthly benefit to the employee during the further continuance of the employee's total disability commencing with the calendar month next following the calendar month in which the employee reaches Normal Retirement Date.  The amount of such monthly benefit shall be determined below.

No further proof of total disability shall be required of any employee entitled to receive such monthly benefit.

B.  The amount of monthly Supplemental Income Benefits payable to an employee shall be an amount equal to the product obtained by multiplying (a) below and (b) below:

(a) the employee's "final pay";

(b) the sum of the percentages determined as follows:

  (i) $1\frac{1}{2}\%$ for each of the first 20 years of Total Service minus any years of Accredited Service not to exceed 20;

  (ii) $1\%$ for each of the next 10 years of Total Service minus any years of Accredited Service in excess of 20 but not to exceed 30;

  (iii) $\frac{1}{2}\%$ for each of the next 10 years of Total Service minus any years of Accredited Service in excess of 30 but not to exceed 40.

No benefit shall be payable under this policy for any period attributable to the number of years of Accredited Service, as defined in the Participant Employer's formal Pension Plan.

The amount of monthly benefit, if any, payable under this section 2-S shall be that portion of the employee's monthly benefit attributable to the number of years of Disability Service.

In computing the sum of percentages under item (b) above, Accredited Service shall be counted first, then Disability Service.

For the purposes of this section:        000028        EXHIBIT A

(a) The term "final pay" means the employee's monthly rate of basic earnings at the commencement of the period of total disability increased or decreased each July 1 according to the change in the Consumer Price Index for the past 12 month period.  However, in no event will a change be deemed to exceed 3%

Article II--LONG TERM DISABILITY BENEFITS (Continued)

Section 2-8.  Supplemental Income Benefits (Continued)

during any 12 month period and in no event will the "final pay" ever be less than the monthly rate of basic earnings in effect on the date the period of total disability commenced.  If the July 1 next following the date of the commencement of the period of total disability is less than 12 months after the period of total disability commences, the adjustment will be based on the change in the Consumer Price Index for the period from the commencement of the period of total disability to the next July 1.  No adjustment will be made for the period from the July 1 immediately prior to the attainment of age 65 to the date that the employee attained the age of 65.

(b) The term "Accredited Service" means the number of years of accredited service of the employee under his Participant Employer's formal Pension Plan at the beginning of the period of total disability.

(c) The term "Disability Service" means the number of years, including any frac- tional part of a year rounded to the nearest month, during the period of total disability of the employee.  However, no Disability Service shall be accrued for any period of time during the period of total disability if the employee received Accredited Service under his Participant Employer' Pension Plan.

(d) The term "Total Service" means the total number of years of Accredited Service and Disability Service.

(e) "Normal Retirement Date" is the end of the month during which an employee attains age 65.

C. The Insurance Company shall be entitled to rely upon the attestation of the Policy- holder as to any fact pertaining to any Pension Plan of any Participant Employer.

000029

EXHIBIT A

322687

## Article III--TERMINATION OF INSURANCE

All insurance of any employee under this policy shall terminate at the earliest time specified below:

(1) Upon discontinuance of the policy.

(2) Immediately when the employee's employment with a Participant Employer in the classes of employees eligible for insurance terminates.  Cessation of active work by an employee shall be deemed to be termination of his employment, except that

(a) in the case of an absence from active work because of sickness or injury, his employment may, for the purposes of insurance under this policy, be deemed to continue until terminated by his Participant Employer, and

(b) in the case of absence from active work because of temporary lay-off, his employment will, for the purposes of insurance under this policy, be deemed to terminate on the employee's last full day of active work prior to the commencement of the lay-off, and

(c) in the case of absence from active work because of leave of absence, his employment will, for the purposes of insurance under this policy, be deemed to terminate on the employee's last full day of active work prior to the commencement of the leave of absence; provided, however, that an employee's employment may, for the purposes of insurance under this policy, be deemed to continue, during a leave of absence, pursuant to written mutual agreement between the Policyholder and the Insurance Company.

In the case of any continuation of insurance in accordance with the foregoing items (a) and (c), the insurance under this policy for such employee shall automatically cease on the date of such termination of his employment by his Participant Employer, as evidenced to the Insurance Company by the Policyholder, whether by notification or by cessation of premium payment on account of such employee's insurance hereunder.

(3) The last day of the calendar month in which the employee attains the age of 69 years and 3 months.

In no event may any insurance provided on a contributory basis be continued beyond the end of the period for which the employee has made to his Participant Employer the contributions required.



GR-73966 SMLTD                    Page 000030                    1 1 79

## Article IV—PREMIUMS

*Section 1.  Premium Calculations and Premium Rates*

The premium shall be determined by multiplying one-hundredth of the amount of monthly benefit in force by the average rate per $100 or monthly benefit as determined below.

The average rate per $100 of monthly benefit shall be determined as of the date of issue by dividing the total of the individual premiums required, according to the table of monthly rates per $100 of monthly benefit at the ages (nearest birthday) of the employees insured as of the date of issue and for the respective amounts of monthly benefit then in force on their lives, by one-hundredth of the aproximate amount of such monthly benefits.

The same average rate will be continued thereafter, provided that a recalculation of such average rate in the same manner may be required, as of any premium-due date, (a) by the Insurance Company, when warranted by a change in factors bearing on the risk assumed, or (b) by the Policyholder, subject to sixty days advance notice to the Insurance Company. Such recalculation shall be made upon the basis of the then attained ages, the amounts of monthly benefit in force, and the scale of monthly rates in effect, all taken as of the date of the recalculation. Such recalculated rate shall thereafter constitute the average rate to be used in determining the premiums payable hereunder, subject, however, to further recalculations under the same conditions.

The amount of monthly benefit, as used in this Article, shall mean the amount determined from Article II.

Any insurance becoming effective shall be charged for from the first day of the policy month coinciding with or next following the date the insurance takes effect. Premium charges for any insurance terminated shall cease as of the first day of the policy month coinciding with or next following the date the insurance terminates. If premiums are payable quarterly, semi-annually, or annually, premium charges or credits for a fraction of a premium-paying period shall be made on a pro-rata basis for the number of policy months between the date premium charges commence or cease and the end of the premium-paying period.

Instead of the method of calculation of premiums above provided, premiums may be calculated by any method which produces approximately the same total amount of premiums and is mutually agreeable to the Policyholder and the Insurance Company.

The foregoing terms of this section shall be applied separately in calculating the premium rate for

(1)  Income Benefits under Section 2 of Article II, and

(2)  Supplemental Income Benefits under Section 2-S  of Article II.

The Premium Rates shall be determined from the tables on the following page.

000031                    EXHIBIT  A

Article IV—Premiums (Continued)

Section 1.   Premium Calculations and Premium Rates (Continued)

As to Income Benefits Under Section 2 of Article II:

Monthly Rates Per $100 of Monthly Benefit

| Age Nearest Birthday | Rate | |
|---|---|---|
| | Male | Female |
| Under 40 | .40 | .46 |
| 40 or over but less than 45 | .71 | .82 |
| 45 or over but less than 50 | 1.13 | 1.30 |
| 50 or over but less than 55 | 2.09 | 2.40 |
| 55 or over but less than 60 | 3.06 | 3.52 |
| 60 or over | 1.79 | 2.06 |

As to Supplement Income Benefits Under Section 2-S of Article II:

Monthly Rates Per $100 of Monthly Benefit

| Age Nearest Birthday | Rate | |
|---|---|---|
| | Male | Female |
| Under 40 | .02 | .02 |
| 40 or over but less than 45 | .06 | .07 |
| 45 or over but less than 50 | .17 | .20 |
| 50 or over but less than 55 | .61 | .70 |
| 55 or over but less than 60 | 1.91 | 2.20 |
| 60 or over | 4.89 | 5.62 |

000032

EXHIBIT A

Article IV—PREMIUMS (Continued)

## Section 2.  Experience Rating

The premium rates specified above shall be subject to such reductions or increases as the Insurance Company shall determine to be warranted by experience or by reason of any change in factors bearing on the risk assumed.  Each reduction or increase in any premium rate shall be made by written notification to the Policyholder by the Insurance Company.

No premium rate may be increased except either by written notification from the Insurance Company to the Policyholder at least thirty-one days before the effective date of such increase or by mutual agreement between the Policyholder and the Insurance Company.

No experience reduction or increase in premium rates shall become effective less than twelve months after the effective date of this policy.

As of the end of any policy year the Insurance Company may declare an experience credit in such amount as the Insurance Company shall determine.  The amount of each experience credit declared by the Insurance Company shall be refunded to the Policyholder, or upon request by the Policyholder, a part or all of the experience credit shall be applied against the payment of any premium or premiums.

If at any time the aggregate of employee contributions theretofore made for group insurance shall exceed the aggregate of premiums theretofore paid for group insurance (after giving effect to any experience credits allowed the Policyholder), such excess shall be applied by the Policyholder for the sole benefit of employees, but the Insurance Company shall not be obliged to see to the application of any such excess.

## Section 3.  Premiums, How Payable

Premiums shall be payable by the Policyholder in advance at the Home Office of the Insurance Company or to its authorized agent.

The first premium under this policy shall be due and payable as of the date of issue to cover the period beginning on that date and ending on the last day of the first policy month and thereafter premiums shall be due and payable on the first day of each policy month.

Premium payments shall not be required for an employee's insurance on any premium due-date during a period for which the employee is entitled to receive benefits under this policy.

## Section 4.  Grace Period

A grace period of thirty-one days following the due-date shall be allowed the Policyholder for the payment of each premium.

000033

EXHIBIT A

## Article V—DISCONTINUANCE OF POLICY

The Policyholder may discontinue this policy with respect to all employees of any one or more Participant Employers, and any Participant Employer may discontinue this policy with respect to all employees of such Employer, by giving to the Insurance Company written notice stating when, after the date of such notice, such discontinuance shall become effective; but no such discontinuance shall become effective with respect to employees of any Participant Employer during any period for which a premium has been paid to the Insurance Company with respect to employees of such Employer.

The Insurance Company reserves the right to discontinue this policy,

(a) with respect to all employees of any Participant Employer, at any time on or after the end of the grace period allowed for payment of a premium with respect to employees of such Employer which has not been paid, by giving written notice to the Policyholder stating when such discontinuance shall become effective;

(b) either in its entirety or with respect to all employees of any Participant Employer, at any time, by giving to the Policyholder written notice stating the date as of which such discontinuance shall become effective, but such date shall not be one that occurs earlier than thirty-one days after the date of such notice unless mutually satisfactory to the Policyholder and the Insurance Company.

If this policy discontinues with respect to any of the employees of a Participant Employer, the Policyholder and the Employer shall be jointly and severally liable to the Insurance Company for all unpaid premiums for the period during which this policy was in force with respect to any of the employees of such Employer.

Section 1.   Assignment

No assignment of any present or future right, interest, or benefit under this policy shall bind the Insurance Company without its written consent.

Section 2.   Employees' Certificates

The Insurance Company will issue to the Policyholder, for delivery to each insured employee, an individual certificate setting forth a summary of the essential features of the insurance coverage to which the employee is entitled and stating to whom the benefits are payable.

Section 3.   Data Required---Clerical Error--Misstatements---Non-Discrimination

The Policyholder and each of the Participant Employers shall furnish to the Insurance Company all information which the Insurance Company may reasonably require with regard to any matters pertaining to this policy.  All documents, books, and records which may have a bearing on the insurance or premiums shall be open for inspection by the Insurance Company at all reasonable times during the continuance of this policy and until the final determination of all rights and obligations under this policy.

Neither clerical error (whether by the Policyholder, by any of the Participant Employers, or by the Insurance Company) in keeping any records pertaining to the insurance, nor delays in making entries thereon, shall invalidate insurance otherwise validly in force or continue insurance otherwise validly terminated, but upon discovery of such error or delay an equitable adjustment of premiums shall be made.

If any relevant facts pertaining to any individual to whom the insurance relates shall be found to have been misstated, an equitable adjustment of premiums shall be made, and if such misstatement affects the existence or the amount of insurance, the true facts shall be used in determining whether insurance is in force under the terms of this policy and in what amount.

No refund of any premium or portion thereof, whether paid in error or otherwise, shall be made for any period commencing earlier than twelve months prior to the date on which evidence that the particular refund should be made is received by the Insurance Company.

In connection with the administration of this policy, the Policyholder and the Participant Employers shall act so as not to discriminate unfairly between individuals in similar situations at the time of such action, but the Insurance Company shall be entitled to rely upon any action of the Policyholder or of any of the Participant Employers without being obliged to inquire into the circumstances thereof.

000035

EXHIBIT  A

MISCELLANEOUS PROVISIONS (Continued)

Section A.  Entire Contract:  Changes

This policy constitutes the entire contract between the parties, and any statement made
by the Policyholder or by any employee shall, in the absence of fraud, be deemed a
representation and not a warranty, and no such statements shall avoid the insurance or
reduce the benefits under this policy or be used in defense to a claim unless it is
contained in a written instrument.

This policy is issued in the non-participating department of the Insurance Company.
This policy may be changed at any time or times by written agreement between the Insur-
ance Company and the Policyholder, without the consent of any employee or other person.
No change in this policy shall be valid unless approved by an executive officer of the
Insurance Company and unless such approval be endorsed hereon or attached hereto.  No
agent has authority to change this policy or to waive any of its provisions.

Failure to insist upon compliance with any provision of this policy at any given time
or times or under any given set or sets of circumstances shall not operate to waive or
modify such provision, or in any manner whatsoever to render it unenforceable, as to
any other time or times or as to any other occurrence or occurrences, whether the
circumstances are, or are not, the same.

000036                    EXHIBIT  A

(a) No misstatement, except a fraudulent misstatement, made by the Policyholder in the application for such policy shall be used to void the policy after it has been in force for two years from the date of issue, nor shall any statement of any employee eligible for coverage under the policy relating to his insurability, except a fraudulent misstatement, be used in defense to a claim for loss incurred or commencing after the insurance coverage with respect to which claim is made has been in effect for two years from the date it became effective.

(b) No claim for disability commencing after one year from the effective date of the insurance coverage with respect to which claim is made shall be reduced or denied on the ground that a disease or physical condition, not excluded from coverage by name or specific description effective on the date of loss, had existed prior to the effective date of the coverage with respect to which claim is made.

Section 6.  Proofs of Loss

Written proof covering the occurrence, the character, and the extent of disability must be furnished to the Insurance Company, within ninety days after the expiration of the qualifying period.  Subsequent written proof of the continuance of such disability must be furnished to the Insurance Company at such intervals as the Insurance Company may reasonably require.  Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity of the employee, later than one year from the time proof is otherwise required.  No action at law or in equity shall be brought to recover on this policy after the expiration of three years after the time written proof of loss is required to be furnished.

The Insurance Company shall have the right to require as part of the proof of claim satisfactory evidence (a) that the employee has made application for all Class II other income benefits referred to in Section 2 of Article II, (b) that he has furnished all required proofs for such benefits, (c) that he has not subsequently waived such benefits, and (d) of the amounts of all Class I and Class II other income benefits payable.

The Insurance Company at its own expense shall have the right and opportunity to have a physician it designates examine the person of any individual whose injury or sickness is the basis of claim when and as often as it may reasonably require during the period for which such individual claims benefits under this policy.

Section 7.  Payment of Claims

Subject to proof of claim, all accrued benefits under this policy will, except as otherwise specifically provided, be paid at the end of each calendar month during the period for which benefits are payable hereunder, and any balance remaining unpaid at the termination of such period will be paid immediately upon receipt of due proof.  Benefits are payable to the insured employee.

A benefit payable for a period which is less than a full month shall be computed on a pro rata basis.

000037                    EXHIBIT  A

Section 7.  Payment of Claims (Continued)

If any benefit under Article II of this policy shall be payable to the estate of the insured employee, or to an insured employee who is a minor or otherwise not competent to give a valid release, the Insurance Company may pay such benefit up to an amount not exceeding $1,000 in aggregate to any relative by blood or connection by marriage of the insured employee who is deemed by the Insurance Company to be equitably entitled thereto. Any payment made by the Insurance Company in good faith pursuant to this provision shall fully discharge the Insurance Company to the extent of such payment.

Section 8.  Determination by the Policyholder

Subject to adjustment for error, the determination and findings made in good faith by the Policyholder with respect to (a) the fact and time of commencement, duration and termination of an employee's employment, lay-off, leave of absence, or absence because of sickness or injury, (b) the monthly rate of basic earnings of any employee, (c) any fact relating to any retirement plan of a Participant Employer, and (d) the membership of any employee in the class of employees eligible for insurance under this policy, shall be conclusive and binding upon all persons for the purposes of this policy.

000038            EXHIBIT  A

# APPLICATION FOR GROUP INSURANCE

_LTD-332687-973_

**1** Application is hereby made to ÆTNA LIFE INSURANCE COMPANY, of Hartford, Connecticut for group insurance providing the kinds of insurance specified below.

Applicant...... Consumers Power Company

Address....... 212 W. Michigan Avenue, Jackson, Michigan 49201

**2** The purpose of the application is to request
a. ☒ issuance of new coverage.
b. ☐ change in existing coverages.
c. ☐ extension of existing coverages to additional groups of employees.

**3** This application includes the following associated employers (Any entry in conflict with applicable law cannot be included):
Michigan Gas Storage Company .................................. located at Jackson, Michigan
.................................................................................. located at ..............................
.................................................................................. located at ..............................

**4** All of the regular, full-time, active employees of any employer mentioned above shall be eligible to participate as to the insurance hereby applied for, except the following (State here the class or classes *excluded*).
Operating, Maintenance and Construction, and Office and Technical employees
Retired employees  are ☐    are not ☒    to be eligible.

**5**

| For Employees | For Dependents | Kind of Insurance | | Maximum Scheduled Amount |
|---|---|---|---|---|
| ☐ | ☐* | Term Life | *Dependents coverage available only where not contrary to law. | $ |
| ☐ | Not Available | Paid-up & Term Life | | $ |
| ☐ | ☐ | Accidental Death & Dismemberment | | $ |
| ☐ | Not Available | Disability Income | | $ |
| ☐ | ☐ | Comprehensive Medical Expense | | $ |
| ☐ | ☐ | Major Medical Expense | | $ |
| ☐ | ☐ | Other Medical Expense | | X X X X X X |
| ☒ | ☐ | Other (Specify) Long Term Disability | | X X X X X X |

**6** Agent(s) of Record........ Cass I. Gittins      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

Note: If countersignature laws require commission sharing with a duly Licensed Resident Agent in another jurisdiction the above designation will be modified to the extent required by the law.

It is requested that the policy or policies be issued on the  ☒ contributory,  ☐ non-contributory basis.

**7** The Applicant agrees that at no time shall any employee be permitted or required to contribute for non-contributory insurance; or, unless the change is approved in writing by the Insurance Company at its Home Office, to make contributions for contributory insurance at a rate higher than the initial contribution rate applicable for the employee's then current insurance. It is agreed that no insurance shall become effective as to any person if he is not then a bona fide, full time employee, regularly performing the duties of his occupation, unless otherwise specifically provided in the Group Policy.

Signed at Jackson, Michigan

Consumers Power Company

_April 28, 1967_
Date

by _R. P. Briggs_                                Applicant

R. P. Briggs
Executive Vice President

**EXHIBIT A**

_Terry K. Woodbury_
Witness

000039

Official Title

GR-23-3   (Rev. 4/64)

9953

Group Control No. 322687

# RIDER

ATTACHED TO AND MADE A PART OF GROUP POLICY NO. LTD-322687

A CONTRACT BETWEEN ÆTNA LIFE INSURANCE COMPANY AND THE POLICYHOLDER

CONSUMERS POWER COMPANY

It is understood and agreed that the policy is changed by the addition or deletion of the pages listed below.

| Page Numbers Of Pages Added | | | Page Numbers Of Pages Deleted | | |
|---|---|---|---|---|---|
| 6-CC | 1 | 1 81 | 6-CC | 12 | 1 73 |
| 6-CC.1 | 1 | 1 81 | ---- | | |

Nothing contained in this rider shall be held to alter or affect any of the terms of the policy other than as herein specifically stated.

IN WITNESS WHEREOF the ÆTNA LIFE INSURANCE COMPANY has signed this rider at HARTFORD, CONNECTICUT, to become effective   January 1, 1981.

Signed by the Insurance Company   March 15, 1990

*Joyce Cunnane*
....................................
Registrar

*Lewis R. Merrine*

Secretary

Signed by the Policyholder ...... *4/2/90* ........

....................................
Signature

Vice President of Human Resources
....................................
Official Title

000040

PLEASE EXECUTE AND RETURN THIS COPY TO
ÆTNA LIFE INSURANCE COMPANY

APPROVED AS TO FORM

*C R Walls*
CONSUMERS POWER COMPANY
LEGAL DEPARTMENT

EXHIBIT A
9981

GR-23-R1
ED. 9-'57

Section 2.  Income Benefits (Continued)

CLASS II (Continued)

(2) Any payment for a disability which commenced on or after the effective date of the employee's insurance under this policy, under the Federal Social Security Act or Railroad Retirement Act, or any similar act of any national government, or by any federal, state, provincial, municipal or other governmental agency or pursuant to any workmen's compensation law, occupational disease law, or any other legislation of similar purpose, or the maritime doctrine of maintenance, wages, and cure.  For the purposes of this item (2), there shall be included any benefits to which the employee or a dependent of the employee is entitled by reason of the employee's disability.

For the purposes of determining other income benefits, any single sum payment and any periodic payments shall be allocated by the Insurance Company to monthly periods, and any single sum payment or periodic payment, regardless of whether such payment is or is not the result of a compromise, award or judgment shall be considered, for the purposes of this policy, to be paid monthly.

For the purposes of the foregoing item (7) under Class I and item (2) under Class II of this subsection B, with respect to any period of total disability, other income benefits shall not include any increase in disability or retirement benefits under the Federal Social Security Act, the Canada Pension Plan, or the Quebec Pension Plan which becomes effective during the period of total disability, on or after December 1, 1973, and after the initial award of such benefits, other than to the extent that the increase is due to a change in the number of the employee's family members, to an adjustment in the orginal award or to a change in the average monthly wage as determined under such Act or Plan.

000041

EXHIBIT A

Group Control No. 322687

RIDER

ATTACHED TO AND MADE A PART OF GROUP POLICY No. LTD-322687-973

A CONTRACT BETWEEN ÆTNA LIFE INSURANCE COMPANY AND THE POLICYHOLDER,

CONSUMER POWER COMPANY

It is understood and agreed that the policy is changed by the addition or deletion of the pages listed below.

| Page Numbers Of Pages Added | Page Numbers Of Pages Deleted |
|---|---|
| 6-(Rev.)        5 1 67 | 6 |

Nothing contained in this rider shall be held to alter or affect any of the terms of the policy other than as herein specifically stated.

IN WITNESS WHEREOF the ÆTNA LIFE INSURANCE COMPANY has signed this rider at HARTFORD, CONNECTICUT, to become effective May 1, 1967.

Signed by the Insurance Company July 7, 1970.

*Helen N. Matijczyk*

Registrar

*S. Daniel Juliani*

Secretary

APPROVED AS TO FORM

CONSUMERS POWER COMPANY
LEGAL DEPARTMENT

Signed by the Policyholder CONSUMERS POWER COMPANY

*W. R. Baur*        000042        Vice President

Signature                              Official Title

EXHIBIT A

GR-23-R1
Ed. 9-'57

PLEASE EXECUTE AND RETURN THIS COPY TO
ÆTNA LIFE INSURANCE COMPANY

9981

Article II—Long Term Disability Insurance

Section 1.  Definitions

As used in this Article:

(a)  "Approved rehabilitation program" means only

  (i)  a program of vocational rehabilitation, whether formal or informal, or

  (ii)  a period of part-time work for purposes of rehabilitation,

which the Insurance Company approves in writing, and which shall be considered to begin only when the Insurance Company gives its approval thereto and to end when the Insurance Company withdraws such approval.

(b)  While an approved rehabilitation program is applicable to an employee, "monthly rate of basic earnings", in respect of any month, means the excess, if any, of item (i) over item (ii):

  (i)  the monthly rate of basic earnings of the disabled employee determined on the basis of the terms of this policy, exclusive of this item (b);

  (ii)  the amount, if any, of remuneration the employee earns for work performed during such month in connection with the approved rehabilitation program.

(c)  "Reasonable occupation", as to any employee, means any gainful activity for which the employee is, or may reasonably become, fitted by education, training, or experience, but shall not mean any such activity if it is in connection with an approved rehabilitation program.

(d)  "Total disability" or "totally disabled" means, during the first twenty-four months of any period of disability, that the employee is unable, solely because of disease or injury, to work at his own occupation; and, thereafter during the continuance of such period of disability, that the employee is unable, solely because of disease or injury, to work at any reasonable occupation.

(e)  A "period of total disability" of an employee shall be deemed to commence on the later to occur of

  (i)  the first day that the employee is totally disabled, and

  (ii)  the thirty-first day immediately preceding the date the employee was, during the period of disability, first seen and treated personally by a legally qualified physician in connection with the disease or injury which caused such disability;

and the period of total disability shall be deemed to terminate on the earliest to occur of

  (i)  the date the employee is no longer totally disabled;

  (ii)  the date upon which the employee commences work at a reasonable occupation;

  (iii)  the date the employee fails to furnish proof of the continuance of total disability, or refuses to be examined, when required in accordance with Article VI;

EXHIBIT  A

GR-73966-SMLTD

RIDER

Attached To And Made A Part Of Group Policy No. LTD-322687
A Contract Between Ætna Life Insurance Company And The Policyholder

CONSUMERS POWER COMPANY

It is understood and agreed that the policy is changed by the addition or deletion of the pages listed below.

| Page Numbers Of Pages Added | | Page Numbers Of Pages Deleted |
|---|---|---|
| a) Effective December 1, 1973 | | |
| 6-CC | 12 1 73 | 6-CC |
| 8 | 12 1 73 | 8 |
| 9 | 12 1 73 | 9 |
| b) Effective June 1, 1974 | | |
| 3 | 6 1 74 | 3 |
| 6-B | 6 1 74 | 6-B |
| 6-E | 6 1 74 | 6-E |
| 6-F | 6 1 74 | 6-F |

Nothing contained in this rider shall be held to alter or affect any of the terms of the policy other than as herein specifically stated.

IN WITNESS WHEREOF the ÆTNA LIFE INSURANCE COMPANY has signed this rider at HARTFORD, CONNECTICUT, to become effective as of the dates indicated above.

Signed by the Insurance Company  October 10, 1974.

_Registrar_                                        _Secretary_

Signed by the Policyholder November 25, 1974

**000044**

**EXHIBIT A**

_Signature_                                         Vice President
                                                    _Official Title_

PLEASE EXECUTE AND RETURN THIS COPY TO
ÆTNA LIFE INSURANCE COMPANY

GR-23-001LTD-322687

Article II—LONG TERM DISABILITY BENEFITS (Continued)

*Section 2.  Income Benefits (Continued)*

CLASS II (Continued)

(2)  Any payment for a disability which commenced on or after the effective date of the employee's insurance under this policy, under the Federal Social Security Act or Railroad Retirement Act, or any similar act of any national government, or by any federal, state, provincial, municipal or other governmental agency or pursuant to any workmen's compensation law, occupational disease law, or any other legislation of similar purpose, or the maritime doctrine of maintenance, wages, and cure.  For the purposes of this item (2), there shall be included any benefits to which the employee or a dependent of the employee is entitled by reason of the employee's disability.

For the purposes of determining other income benefits, any single sum payment and any periodic payments shall be allocated by the Insurance Company to monthly periods, and any single sum payment or periodic payment, regardless of whether such payment is or is not the result of a compromise, award or judgment shall be considered, for the purposes of this policy, to be paid monthly.

EXHIBIT A

Section 1.   Premium Calculations and Premium Rates

The premium shall be determined by multiplying one-hundredth of the amount of monthly benefit in force by the average rate per $100 of monthly benefit as determined below.

The average rate per $100 of monthly benefit shall be determined as of the date of issue by dividing the total of the individual premiums required, according to the table of monthly rates per $100 of monthly benefit at the ages (nearest birthday) of the employees insured as of the date of issue and for the respective amounts of monthly benefit then in force on their lives, by one-hundredth of the approximate amount of such monthly benefits.

The same average rate will be continued thereafter, provided that either the Policyholder or the Insurance Company may require that a recalculation of such average rate be made in the same manner as of any premium due date on or after the end of the first policy year (but not more often than once in any twelve month period) or in any event as of the date of any amendment of this policy which would increase or decrease the Insurance Company's liability under this policy.  Such recalculation shall be made upon the basis of the then attained ages (nearest birthday), the amounts of monthly benefit then in force, and the scale of monthly rates then in effect.  Such recalculated rate shall thereafter constitute the average rate to be used in determining the premiums payable hereunder, subject, however, to further recalculations under the same conditions.

The amount of monthly benefit, as used in this Article, shall mean the amount determined from Article II.

Any insurance becoming effective shall be charged for from the first day of the policy month coinciding with or next following the date the insurance takes effect.  Premium charges for any insurance terminated shall cease as of the first day of the policy month coinciding with or next following the date the insurance terminates.  If premiums are payable quarterly, semi-annually, or annually, premium charges or credits for a fraction of a premium-paying period shall be made on a pro-rata basis for the number of policy months between the date premium charges commence or cease and the end of the premium-paying period.

Instead of the method of calculation of premiums above provided, premiums may be calculated by any method which produces approximately the same total amount of premiums and is mutually agreeable to the Policyholder and the Insurance Company.

The foregoing terms of this section shall be applied separately in calculating the premium rate for

(1)  Income Benefits under Section 2 of Article II, and

(2)  Supplemental Income Benefits under Section 2-S of Article II.

The premium Rates shall be determined from the tables on the following page.

000046                                  EXHIBIT  A

## Article V—DISCONTINUANCE OF POLICY

The Policyholder may discontinue this policy with respect to all employees of any one or more Participant Employers, and any Participant Employer may discontinue this policy with respect to all employees of such Employer, by giving to the Insurance Company written notice stating when, after the date of such notice, such discontinuance shall become effective; but no such discontinuance shall become effective with respect to employees of any Participant Employer during any period for which a premium has been paid to the Insurance Company with respect to employees of such Employer.

The Insurance Company reserves the right to discontinue this policy,

(a) with respect to all employees of any Participant Employer, at any time after the end of the grace period allowed for payment of a premium with respect to employees of such Employer which has not been paid, by giving written notice before or after the end of the grace period to the Policyholder stating when such discontinuance shall become effective;

(b) with respect to all employees of any Participant Employer, at any time when such Employer and the Policyholder are no longer associated in business to an extent which, in the opinion of either the Policyholder or the Insurance Company, is sufficient to warrant the continued inclusion of such Employer as a Participant Employer in this policy;

(c) in its entirety, when either (i) fewer than fifty employees are insured; or (ii) less than 75% of the employees eligible for any contributory insurance are insured therefor; or (iii) less than 100% of the employees eligible for any non-contributory insurance are insured therefor; or (iv) the Policyholder is no longer included as a Participant Employer in this policy;

(d) either in its entirety or with respect to all employees of any Participant Employer, if such Employer or the Policyholder shall fail to furnish promptly any information which the Insurance Company may reasonably require or if the Employer or the Policyholder shall fail, without good and sufficient cause, to duly perform in good faith any one or more of its or their other obligations pertaining to this policy.

Any discontinuance made in accordance with item (b), item (c), or item (d) above shall be subject to the condition that the Insurance Company shall give to the Policyholder written notice stating the premium-due date as of which such discontinuance shall become effective, but such premium-due date shall not be one that occurs earlier than thirty-one days after the date of such notice unless mutually satisfactory to the Policyholder and the Insurance Company.

If this policy discontinues with respect to any of the employees of a Participant Employer, the Policyholder and the Employer shall be jointly and severally liable to the Insurance Company for all unpaid premiums for the period during which this policy was in force with respect to any of the employees of such Employer.

000047    EXHIBIT A

Section 1. Definitions

As used in this policy:

(a) The term "date of issue" means the date this policy took effect as shown on Page 1 of this policy.

(b) "Policy anniversaries" shall be deemed to occur on the anniversaries of the date of issue and on the same day in each succeeding year.

(c) The term "policy year" means a period commencing with the date of issue of this policy, or a policy anniversary, and terminating immediately prior to the next succeeding policy anniversary.

(d) The first "policy month" shall commence on the date of issue. Each "policy month" thereafter shall be deemed to commence on the same day of the calendar month.

(e) "Contributory insurance" means insurance for which an employee makes written request to his Participant Employer and agrees to make the required contributions to his Participant Employer. "Non-contributory insurance" is insurance for which an employee does not make written request nor contribute toward the cost. This policy provides insurance on the contributory basis.

(f) "Monthly rate of basic earnings" does not include bonuses, overtime pay, and other extra compensation. The monthly rate of basic earnings of a disabled employee shall be deemed to be the monthly rate in effect on the day immediately preceding the date of commencement of the period of disability. A retroactive change in an employee's rate of earnings made while the employee is disabled shall be disregarded.

(g) "The prior plan" is the plan carried or sponsored by the Policyholder which provided monthly sickness indemnity and monthly accident indemnity for long term disabilities and which was replaced by the benefits provided in this policy.

000048

EXHIBIT A

Article II—LONG TERM DISABILITY BENEFITS (Continued)

*Section 2.  Income Benefits*

A. If a period of total disability of an employee commences while the employee is insured hereunder and continues during and beyond the qualifying period and if proof of loss is furnished in accordance with Article VI, the Insurance Company shall, subject to the terms of this policy, pay a monthly benefit during the continuance of the period of total disability commencing with the first day following the completion of the qualifying period.

The amount of monthly benefit payable under this policy for a given monthly period shall be 60% of the employee's monthly rate of basic earnings if no other income benefits are payable for the given monthly period.

If other income benefits are payable for a given monthly period, the amount of monthly benefit payable under this policy for the given monthly period shall be an amount equal to the excess, if any, of 60% of the employee's monthly rate of basic earnings over the amount of other income benefits payable for the given monthly period.

In no event shall the amount of monthly benefit exceed $1,083.

000049

EXHIBIT A

GR-73966-SMLTD                     Page G-B

Article II--LONG TERM DISABILITY BENEFITS (Continued)

Section 2-S.  Supplemental Income Benefits

A.  If an employee has at some time qualified for monthly benefits under the terms of Section 2 of this Article II, or under the prior plan, or under both, for a period of at least fifty-one consecutive months and if, on the date he attains age sixty-five, he meets at least one of the following requirements:

   (i) he is employed by a Participant Employer, or

   (ii) he is entitled to receive a monthly benefit under Section 2 of this Article II for the month in which he attains age sixty-five, or

   (iii) he is eligible to receive a pension or annuity under his Participant Employer's formal retirement plan;

the Insurance Company shall pay a monthly benefit to the employee during the further continuance of the employee's total disability commencing with the calendar month next following the calendar month in which the employee attains age sixty-five.  The amount of such monthly benefit shall be determined below.

No further proof of total disability shall be required of any employee entitled to receive such monthly benefit.

B.  The amount of monthly benefit, if any, payable in accordance with the terms of this Section 2-S shall be an amount equal to the product obtained by multiplying x below by y below:

x--1.4% of the first $400 of the employee's monthly rate of basic earnings, plus 1.75% of the next $200 of such earnings, plus 2.2% of the excess, if any, of such earning over $600.

y--the number of years, including fractional parts of any year, of all periods of total disability for which the employee was entitled to a monthly benefit under the terms of Section 2 of this Article II, or under the prior plan, or under both; provided, however, that in the computation of such number of years, there shall be excluded

   (1) any period of total disability in respect of which neither of the following conditions (a) or (b) is met, namely

     (a) the employee, at the commencement of the period of total disability, was a participant under his Participant Employer's formal retirement plan, or

     (b) the employee would have become eligible to participate under said plan had he continued in the service of his Participant Employer during the period of total disability;

   (2) any period, during such period of total disability, in respect of which the employee received credit for service under his Participant Employer's formal retirement plan;

000050                    EXHIBIT  A

Section 2-S.  Supplemental Income Benefits (Continued)

    (3) that portion, if any, of any such period of total disability prior to the date the employee would have become eligible to participate in his Participant Employer's formal retirement plan, had he not been disabled;

    (4) that portion of any such period of total disability which constituted the qualifying period as to that period of total disability; and

    (5) that portion of any such period of total disability subsequent to the date on which the employee retired, for a reason other than disability, under his Participant Employer's formal retirement plan.

C. The Insurance Company shall be entitled to rely upon the attestation of the Policyholder as to any fact pertaining to any retirement plan of any Participant Employer.

000051

EXHIBIT A

## RIDER

ATTACHED TO AND MADE A PART OF GROUP POLICY No. LTD-322687

A CONTRACT BETWEEN ÆTNA LIFE INSURANCE COMPANY AND THE POLICYHOLDER

### CONSUMERS POWER COMPANY

It is understood and agreed that the policy is changed by the addition or deletion of the pages listed below.

| Page Numbers Of Pages Added | | | Page Numbers Of Pages Deleted | |
|---|---|---|---|---|
| 3 | | 9 1 74 | 3 | 6 1 74 |
| 4 | | 9 1 74 | 4 | |

Nothing contained in this rider shall be held to alter or affect any of the terms of the policy other than as herein specifically stated.

IN WITNESS WHEREOF the ÆTNA LIFE INSURANCE COMPANY has signed this rider at HARTFORD, CONNECTICUT, to become effective September 1, 1974

Signed by the Insurance Company  October 28, 1974

*Oscar G. Garcia*
Registrar

*Timothy F. Carter*
Secretary

Signed by the Policyholder...November 25, 1974

000052

EXHIBIT A

*[signature]*
Signature

Vice President
Official Title

PLEASE EXECUTE AND RETURN THIS COPY TO
ÆTNA LIFE INSURANCE COMPANY

GR-23-SM-LTD-322687

Article I--GENERAL PROVISIONS

Section 1.  Definitions

As used in this policy:

(a) The term "date of issue" means the date this policy took effect as shown on Page 1 of this policy.

(b) "Policy anniversaries" shall be deemed to occur on the anniversaries of the date of issue and on the same day in each succeeding year.

(c) The term "policy year" means a period commencing with the date of issue of this policy, or a policy anniversary, and terminating immediately prior to the next succeeding policy anniversary.

(d) The first "policy month" shall commence on the date of issue.  Each "policy month" thereafter shall be deemed to commence on the same day of the calendar month.

(e) "Contributory insurance" means insurance for which an employee makes written request to his Participant Employer and agrees to make the required contributions to his Participant Employer.  "Non-contributory insurance" is insurance for which an employee does not make written request nor contribute toward the cost.  This policy provides insurance on the contributory basis.

(f) "Monthly rate of basic earnings" does not include bonuses, overtime pay, and other extra compensation.  The monthly rate of basic earnings of a disabled employee shall be deemed to be the monthly rate in effect on the day immediately preceding the date of commencement of the period of disability.  A retroactive change in an employee's rate of earnings made while the employee is disabled shall be disregarded.

(g) "The prior plan" is the plan carried or sponsored by the Participant Employer which provided monthly sickness indemnity and monthly accident indemnity for long term disabilities and which was replaced by the benefits provided in this policy.

000053

EXHIBIT A

Page 3                6 1 74

Section 2.   List of Participant Employers

An Employer shall be eligible to be included in this list as a Participant Employer if such inclusion is not contrary to any applicable insurance law of the state or other jurisdiction in which this policy is delivered.

The Policyholder may act for and on behalf of any and all of the Employers included in this list in all matters pertaining to this policy, and every act done by the Policyholder, agreement made between the Insurance Company and the Policyholder, or notice given by the Insurance Company to the Policyholder or by the Policyholder to the Insurance Company, shall be binding on all such Employers.

Any eligible Employer may be added to this list as a Participant Employer only upon written agreement between the Policyholder and the Insurance Company and upon terms mutually agreeable to them.

An Employer shall be eliminated automatically from this list when this policy is discontinued with respect to employees of such Employer, as provided for elsewhere in this policy, but termination of an Employer's status as a Participant Employer shall not relieve such Employer from any obligations to the Insurance Company with respect to the time such Employer was a Participant Employer under this policy.

| Name of Participant Employer | Principal Location | Effective Date of Inclusion |
|---|---|---|
| Consumers Power Company | Jackson, Michigan | Date of Issue |
| Michigan Gas Storage Company | Jackson, Michigan | Date of Issue |

EXHIBIT A

000054

## RIDER

ATTACHED TO AND MADE A PART OF GROUP POLICY No. LTD-322687
A CONTRACT BETWEEN ÆTNA LIFE INSURANCE COMPANY AND THE POLICYHOLDER

CONSUMER POWER COMPANY

It is understood and agreed that the policy is changed by the addition or deletion of the pages listed below.

| Page Numbers Of Pages Added | | Page Numbers Of Pages Deleted |
|---|---|---|
| 5 | 3 1 75 | 5 |
| 5-B | 3 1 75 | --- |

Nothing contained in this rider shall be held to alter or affect any of the terms of the policy other than as herein specifically stated.

IN WITNESS WHEREOF the ÆTNA LIFE INSURANCE COMPANY has signed this rider at HARTFORD, CONNECTICUT, to become effective March 1, 1975.

Signed by the Insurance Company March 27, 1975.

*Virginia A. Trenholm*
*Registrar*

*Timothy F. Carter*
*Secretary*

Signed by the Policyholder.....................................
CONSUMERS POWER COMPANY

By.........................................    **000055**    Executive Vice President
W. R. Boris    *Signature*    .........................................
    *Official Title*

GR-23-R1
Ed. 9-'57

**EXHIBIT  A**

PLEASE EXECUTE AND RETURN THIS COPY TO
ÆTNA LIFE INSURANCE COMPANY

APV'D AS TO ...
.......... 9981

Article I—GENERAL PROVISIONS (Continued)

Section 3.  Employees to be Insured

A.  Employees Eligible:

The following class of employees shall be eligible for insurance under this policy:

All full-time Executive, Administrative and Professional employees of a Participant Employer who are at least twenty-five years of age, but who have not reached the first day of the calendar month next following the date of attaining the age of sixty-four years and three months, excluding, however, any employee permanently assigned to work outside of the United States and Canada.

For the purposes of this policy, a "full-time employee" is one who is regularly scheduled to work at least thirty-hours per week during his Participant Employer's work week.

Each employee in an eligible class who has completed two years or more of continuous service on the date of issue shall become eligible for insurance on that date, and each other employee in an eligible class shall become eligible for insurance on the date on which he completes two years of continuous service since the date he was last employed by a Participant Employer.

Anything to the contrary notwithstanding, if an individual is in the employ of or connected with two or more Participant Employers, he shall not be eligible for multiple coverage under this policy, but shall be treated the same as if he were in the employ of or connected with a single Participant Employer; the amount of insurance for which any such individual shall be eligible under this policy shall under no circumstances exceed the amount which would apply if all of the Participant Employers with which he is employed or connected were a single Participant Employer and if the aggregate of the remuneration being paid to him by all such Participant Employers were being paid to him by a single Participant Employer.

If any Participant Employer is a partnership, the natural-person partners thereof shall be considered to be employees within the meaning of this policy if and while they are actively engaged in and devoting their time on a substantially full-time basis to the conduct of the business of the partnership.  If any Participant Employer is an individual proprietorship, the natural-person proprietor thereof shall be considered to be an employee within the meaning of this policy if and while he is actively engaged in and devoting his time on a substantially full-time basis to the conduct of the business of the proprietorship.

EXHIBIT A

Group Control No. 322687

ATTACHED TO AND MADE A PART OF GROUP POLICY No.  LTD-322687
A CONTRACT BETWEEN ÆTNA LIFE INSURANCE COMPANY AND THE POLICYHOLDER

## CONSUMERS POWER COMPANY

It is understood and agreed that the policy is changed by the addition or deletion of the pages listed below.

| Page Numbers Of Pages Added | | Page Numbers Of Pages Deleted | |
|---|---|---|---|
| 4 | 1 1 77 | 4 | 9 1 74 |
| 5 | 1 1 77 | 5 | 3 1 1 75 |

Nothing contained in this rider shall be held to alter or affect any of the terms of the policy other than as herein specifically stated.

IN WITNESS WHEREOF the ÆTNA LIFE INSURANCE COMPANY has signed this rider at HARTFORD, CONNECTICUT, to become effective  January 1, 1977.

Signed by the Insurance Company December 8, 1978

*Registrar*                                    *Secretary*

Signed by the Policyholder....February 21, 1979

*Signature*          000057          Executive Vice President
                                     *Official Title*

GR-23-R1
Ed. 9-'57

PLEASE EXECUTE AND RETURN THIS COPY TO
ÆTNA LIFE INSURANCE COMPANY

EXHIBIT A

9981

MAR 1 3 1979

*Section 2. List of Participant Employers*

An Employer shall be eligible to be included in this list as a Participant Employer if such inclusion is not contrary to any applicable insurance law of the state or other jurisdiction in which this policy is delivered.

The Policyholder may act for and on behalf of any and all of the Employers included in this list in all matters pertaining to this policy, and every act done by the Policyholder, agreement made between the Insurance Company and the Policyholder, or notice given by the Insurance Company to the Policyholder or by the Policyholder to the Insurance Company, shall be binding on all such Employers.

Any eligible Employer may be added to this list as a Participant Employer only upon written agreement between the Policyholder and the Insurance Company and upon terms mutually agreeable to them.

An Employer shall be eliminated automatically from this list when this policy is discontinued with respect to employees of such Employer, as provided for elsewhere in this policy, but termination of an Employer's status as a Participant Employer shall not relieve such Employer from any obligations to the Insurance Company with respect to the time such Employer was a Participant Employer under this policy.

| Name of Participant Employer | Principal Location | Effective Date of Inclusion |
|---|---|---|
| Consumers Power Company | Jackson, Michigan | Date of Issue |
| Michigan Gas Storage Company | Jackson, Michigan | Date of Issue |
| Northern Michigan Exploration Company | Jackson, Michigan | September 1, 1974 |

000058

EXHIBIT A
9 1 74

GR-73966-SMLTD

322687

Article I--GENERAL PROVISIONS (Continued)

Section 3. Employees to be Insured

A. Employees Eligible:

The following class of employees shall be eligible for insurance under this policy:

All full-time Executive, Administrative and Professional employees of a Participant Employer who are at least twenty-five years of age, but who have not reached the first day of the calendar month next following the date of attaining the age of sixty-four years and three months, excluding, however, any employee permanently assigned to work outside of the United States and Canada.

For the purposes of this policy, a "full-time employee" is one who is regularly scheduled to work at least thirty-hours per week during his Participant Employer's work week.

Each employee in an eligible class who is Assistant Vice Presidency level or above whose employment commences after March 1, 1973, shall become eligible for insurance on the later to occur of

(a) March 1, 1975, and

(b) the date on which he enters the service of a Participant Employer.

Each other employee in an eligible class shall become eligible for insurance on the date on which he completes two years of continuous service since the date he was last employed by a Participant Employer.

Anything to the contrary notwithstanding, if an individual is in the employ of or connected with two or more Participant Employers, he shall not be eligible for multiple coverage under this policy, but shall be treated the same as if he were in the employ of or connected with a single Participant Employer; the amount of insurance for which any such individual shall be eligible under this policy shall under no circumstances exceed the amount which would apply if all of the Participant Employers with which he is employed or connected were a single Participant Employer and if the aggregate of the remuneration being paid to him by all such Participant Employers were being paid to him by a single Participant Employer.

If any Participant Employer is a partnership, the natural-person partners thereof shall be considered to be employees within the meaning of this policy if and while they are actively engaged in and devoting their time on a substantially full-time basis to the conduct of the business of the partnership. If any Participant Employer is an individual proprietorship, the natural-person proprietor thereof shall be considered to be an employee within the meaning of this policy if and while he is actively engaged in and devoting his time on a substantially full-time basis to the conduct of the business of the proprietorship.

000059

EXHIBIT A

# RIDER

ATTACHED TO AND MADE A PART OF GROUP POLICY No. LTD–322687
A CONTRACT BETWEEN ÆTNA LIFE INSURANCE COMPANY AND THE POLICYHOLDER

CONSUMERS POWER COMPANY

It is understood and agreed that the policy is changed by the addition or deletion of the pages listed below.

| Page Numbers Of Pages Added | | Page Numbers Of Pages Deleted | |
|---|---|---|---|
| All Bearing 1 1 79 Date | | | |
| 5–B | | 5–B | 1 1 75 |
| 6–B | | 6–B | 6 1 74 |

Nothing contained in this rider shall be held to alter or affect any of the terms of the policy other than as herein specifically stated.

IN WITNESS WHEREOF the ÆTNA LIFE INSURANCE COMPANY has signed this rider at HARTFORD, CONNECTICUT, to become effective January 1, 1979.

Signed by the Insurance Company  January 31, 1979.

_____              _____
     *Registrar*                            Lewis R Merrins
                                         *Secretary*

Signed by the Policyholder..........Consumers Power Company

_____           000060
     *Signature*                      Executive Vice President
                                     *Official Title*      EXHIBIT A

GR-23-R1          JAN 2 2 1980
Ed. 9-'57                                                      9981
              APPROVED AS TO FORM
              CONSUMERS POWER COMPANY
              LEGAL DEPARTMENT

322687

Article I—GENERAL PROVISIONS (Continued)

Section 4.  Changes in the Plan of Insurance

The amendments to this policy which become effective on      January 1, 1975   , shall
not apply in respect of any benefits payable for a period of disability, whether con-
tinuous or interrupted, which commenced prior to said date.

000061

EXHIBIT  A

33158

Section 2.  Income Benefits

A.  If a period of total disability of an employee commences while the employee is insured
    hereunder and continues during and beyond the qualifying period and if proof of loss
    is furnished in accordance with Article VI, the Insurance Company shall, subject to
    the terms of this policy, pay a monthly benefit during the continuance of the period
    of total disability commencing with the first day following the completion of the
    qualifying period.

    The amount of monthly benefit payable under this policy for a given monthly period shall
    be 60% of the employee's monthly rate of basic earnings if no other income benefits
    are payable for the given monthly period.

    If other income benefits are payable for a given monthly period, the amount of monthly
    benefit payable under this policy for the given monthly period shall be an amount
    equal to the excess, if any, of 60% of the employee's monthly rate of basic earnings
    over the amount of other income benefits payable for the given monthly period.

    In no event shall the amount of monthly benefit exceed $2,000.


000062          EXHIBIT  A

COPY

# RIDER

Group Control No. 322687

ATTACHED TO AND MADE A PART OF GROUP POLICY No. LTD-322687
A CONTRACT BETWEEN ÆTNA LIFE INSURANCE COMPANY AND THE POLICYHOLDER

CONSUMERS POWER COMPANY

It is understood and agreed that the policy is changed by the addition or deletion of the pages listed below.

| Page Numbers Of Pages Added | Page Numbers Of Pages Deleted | |
|---|---|---|
| All Bearing 1 1 79 Date | | |
| 5 | 5 | 1 1 77 |
| 5-B | 5-B | 1 1 77 1 1 79 |
| 6 | 6 (Rev.) | 5 1 67 |
| 6-A | 6-A | |
| 6-A (Continued) | | |
| 6-D | 6-D | |
| 7 | 7 | |

Nothing contained in this rider shall be held to alter or affect any of the terms of the policy other than as herein specifically stated.

IN WITNESS WHEREOF the ÆTNA LIFE INSURANCE COMPANY has signed this rider at HARTFORD, CONNECTICUT, to become effective January 1, 1979.

Signed by the Insurance Company  April 2, 1981.

_Jean M. Duffy_
_Registrar_

_Lewis R. Mervine_
_Secretary_

Signed by the Policyholder....... June 1, 1981

_Signature_          000063

Executive Vice President
_Official Title_

EXHIBIT A

GR-23-R1
Ed. 9-'57

PLEASE EXECUTE AND RETURN THIS COPY TO
ÆTNA LIFE INSURANCE COMPANY

9981

Section 3.  Employees to be Insured

A. Employees Eligible:

The following class of employees shall be eligible for insurance under this policy:

All full-time Executive, Administrative and Professional employees of a Participant Employer who are at least twenty-five years of age, but who have not reached the first day of the calendar month next following the date of attaining the age of sixty-four years and three months, excluding, however, any employee permanently assigned to work outside of the United States and Canada.

For the purposes of this policy, a "full-time employee" is one who is regularly scheduled to work at least thirty-hours per week during his Participant Employer's work week.

Each employee in an eligible class shall become eligible for insurance on the date on which he completes two years of continuous service since the date he was last employed by a Participant Employer; provided, however, that each employee in an eligible class of Plateau Resources Limited, whose employment commenced on or before the date Plateau Resources Limited was included as a Participant Employer, shall become eligible for Employee Coverage on that date; provided further, however, that each other employee of Plateau Resources Limited shall become eligible for Employee Coverage on the day he becomes a member of the eligible class of employees.

Each employee in an eligible class who is an Officer, including an Assistant Officer, whose employment commences after March 1, 1973, shall become eligible for insurance on the later to occur of

(a) March 1, 1975, or
(b) the date on which he enters the service of a Participant Employer.

Anything to the contrary notwithstanding, if an individual is in the employ of or connected with two or more Participant Employers, he shall not be eligible for multiple coverage under this policy, but shall be treated the same as if he were in the employ of or connected with a single Participant Employer; the amount of insurance for which any such individual shall be eligible under this policy shall under no circumstances exceed the amount which would apply if all of the Participant Employers with which he is employed or connected were a single Participant Employer and if the aggregate of the remuneration being paid to him by all such Participant Employers were being paid to him by a single Participant Employer.

If any Participant Employer is a partnership, the natural-person partners thereof shall be considered to be employees within the meaning of this policy if and while they are actively engaged in and devoting their time on a substantially full-time basis to the conduct of the business of the partnership.  If any Participant Employer is an individual proprietorship, the natural-person proprietor thereof shall be considered to be an employee within the meaning of this policy if and while he is actively engaged in and devoting his time on a substantially full-time basis to the conduct of the business of the proprietorship.

<div align="center">000064</div>

EXHIBIT A

/ / 77

Article I—GENERAL PROVISIONS (Continued)

Section 4.   Changes in the Plan of Insurance

The amendments to this policy which become effective on January 1, 1979, shall not apply in respect of any benefits payable for a period of disability, whether continuous or interrupted, which commenced prior to said date.

000065

EXHIBIT A

Section 1.  Definitions

As used in this Article:

(a) "Approved rehabilitation program" means only

  (i) a program of vocational rehabilitation, whether formal or informal, or

  (ii) a period of part-time work for purposes of rehabilitation,

  which the Insurance Company approves in writing, and which shall be considered to begin only when the Insurance Company gives its approval thereto and to end when the Insurance Company withdraws such approval.

(b) While an approved rehabilitation program is applicable to an employee, "monthly rate of basic earnings", in respect of any month, means the excess, if any, of item (i) over item (ii):

  (i) the monthly rate of basic earnings of the disabled employee determined on the basis of the terms of this policy, exclusive of this item (b);

  (ii) the amount, if any, of remuneration the employee earns for work performed during such month in connection with the approved rehabilitation program.

(c) "Reasonable occupation", as to any employee, means any gainful activity for which the employee is, or may reasonably become, fitted by education, training, or experience, but shall not mean any such activity if it is in connection with an approved rehabilitation program.

(d) "Total disability" or "totally disabled" means, during the first thirty-three months of any period of disability, that the employee is unable, solely because of disease or injury, to work at his own occupation; and, thereafter during the continuance of such period of disability, that the employee is unable, solely because of disease or injury, to work at any reasonable occupation.

(e) A "period of total disability" of an employee shall be deemed to commence on the later to occur of

  (i) the first day that the employee is totally disabled, and

  (ii) the thirty-first day immediately preceding the date the employee was, during the period of disability, first seen and treated personally by a legally qualified physician in connection with the disease or injury which caused such disability;

  and the period of total disability shall be deemed to terminate on the earliest to occur of

  (i) the date the employee is no longer totally disabled;

  (ii) the date upon which the employee commences work at a reasonable occupation;

  (iii) the date the employee fails to furnish proof of the continuance of total disability, or refuses to be examined, when required in accordance with Article VI;

000066                    EXHIBIT  A

Section 1.   Definitions (Continued)

(iv)   the date the employee ceases to be under the care of a legally qualified physician;

(v)   the last day of the calendar month in which the employee attains the age of sixty-five years;

(vi)   the date of the employee's death.

(f)   Any two separate periods of total disability which arise from the same or related causes and which are separated by less than six months of active work shall be considered as one period of total disability, except that the earlier of such separate periods shall not be taken into account if at the beginning of such earlier period the employee was not insured under this policy.  Having combined two separate periods into a single period, the foregoing rule may be applied successively to any further separate period of total disability provided such further separate period of disability also arises from the same or related causes and is not separated from the last preceding such period by more than six months of active work. See item (g) below for an exception to this rule during the "qualifying period".

(g)   "Qualifying period" means, as to any one period of total disability of an employee, the first 270 days of such period of total disability of the employee.  Only one qualifying period is required with respect to those periods of total disability which are considered as one period of total disability under item (f).  During the qualifying period, the period of active work which is required to establish a new period of total disability in item (f) shall be thirty-one days rather than six months.

EXHIBIT A

Section 3.  Exclusion, Limitations and Other Provisions
            Relating to Long Term Disability Benefits

No insurance is afforded under this policy

(a) as to a disability which is caused or contributed to by, or as a consequence of, pregnancy or resulting childbirth, miscarriage, or abortion; or

(b) as to a disability due to intentionally self-inflicted injuries; or

(c) as to a disability resulting from the commission by the employee of, or an attempt by the employee to commit, an assault, battery, or felony; or

(d) as to a disability due to war or any act of war (whether war is declared or not); or

(e) as to a disability due to insurrection, rebellion, or participation in a riot or civil commotion.

Section 4.  Extension of Benefits

If an employee's insurance terminates during a period of total disability which commenced while such insurance was in force, any benefits otherwise provided under this policy will continue to be available during the continuance of such period of total disability.

000068

EXHIBIT A

The insurance of any employee under this policy shall terminate at the earliest time specified below:

(1) Upon discontinuance of the policy.

(2) Immediately when the employee's employment with a Participant Employer in the classes of employees eligible for insurance terminates. Cessation of active work by an employee shall be deemed to be termination of his employment, except that

    (a) in the case of an absence from active work because of sickness or injury, his employment may, for the purposes of insurance under this policy, be deemed to continue until terminated by his Participant Employer, and

    (b) in the case of absence from active work because of temporary lay off, his employment will, for the purposes of insurance under this policy, be deemed to terminate on the employee's last full day of active work prior to the commencement of the lay-off, and

    (c) in the case of absence from active work because of leave of absence, his employment will, for the purposes of insurance under this policy, be deemed to terminate on the employee's last full day of active work prior to the commencement of the leave of absence; provided, however, that an employee's employment may, for the purposes of insurance under this policy, be deemed to continue, during a leave of absence, pursuant to written mutual agreement between the Policyholder and the Insurance Company.

In the case of any continuation of insurance in accordance with the foregoing items (a) and (c), the insurance under this policy for such employee shall automatically cease on the date of such termination of his employment by his Participant Employer, as evidenced to the Insurance Company by the Policyholder, whether by notification or by cessation of premium payment on account of such employee's insurance hereunder.

(3) The last day of the calendar month in which the employee attains the age of 64 years and 3 months.

In no event may any insurance provided on a contributory basis be continued beyond the end of the period for which the employee has made to his Participant Employer the contributions required.

EXHIBIT A

RIDER

ATTACHED TO AND MADE A PART OF GROUP POLICY No. LTD-322687
A CONTRACT BETWEEN ÆTNA LIFE INSURANCE COMPANY AND THE POLICYHOLDER

CONSUMERS POWER COMPANY

It is understood and agreed that the policy is changed by the addition or deletion of the pages listed below.

| Page Numbers Of Pages Added | Page Numbers Of Pages Deleted |
|---|---|
| 3          1 1 80 | 3          9 1 74 |

Nothing contained in this rider shall be held to alter or affect any of the terms of the policy other than as herein specifically stated.

IN WITNESS WHEREOF the ÆTNA LIFE INSURANCE COMPANY has signed this rider at HARTFORD, CONNECTICUT, to become effective  January 1, 1980.

Signed by the Insurance Company  August 21, 1979.

*Paula Ballsiefer*
Registrar

*Lewis R. Mervine*
Secretary

Signed by the Policyholder...Consumers Power Company

*W R Garis*
Signature

Executive Vice President
Official Title

GR-23-R1
Ed. 9-'57

JAN 2 2 1980          000070

APPROVED AS TO FORM
CONSUMERS POWER COMPANY
LEGAL DEPARTMENT

EXHIBIT A

9981

Article I--GENERAL PROVISIONS

Section 1. Definitions

As used in this policy:

(a) The term "date of issue" means the date this policy took effect as shown on Page 1 of this policy.

(b) "Policy anniversaries" shall be deemed to occur on the anniversaries of the date of issue and on the same day in each succeeding year.

(c) The term "policy year" means a period commencing with the date of issue of this policy, or a policy anniversary, and terminating immediately prior to the next succeeding policy anniversary.

(d) The first "policy month" shall commence on the date of issue. Each "policy month" thereafter shall be deemed to commence on the same day of the calendar month.

(e) "Contributory insurance" means insurance for which an employee makes written request to his Participant Employer and agrees to make the required contributions to his Participant Employer. "Non-contributory insurance" is insurance for which an employee does not make written request nor contribute toward the cost. This policy provides insurance on the contributory basis.

(f) "Monthly rate of basic earnings" does not include bonuses, overtime pay, and other extra compensation. The monthly rate of basic earnings of a disabled employee shall be deemed to be the monthly rate in effect on the day immediately preceding the date of commencement of the period of disability. A retroactive change in an employee's rate of earnings made while the employee is disabled shall be disregarded.

(g) "The prior plan" is the plan carried or sponsored by Consumers Power Company and Michigan Gas Storage Company which provided monthly sickness indemnity and monthly accident indemnity for long term disabilities and which was replaced by the benefits provided in this policy.

000071                    EXHIBIT A

RIDER

Group Control No. 322687

COPY B

ATTACHED TO AND MADE A PART OF GROUP POLICY No. LTD-322687
A CONTRACT BETWEEN ÆTNA LIFE INSURANCE COMPANY AND THE POLICYHOLDER

CONSUMERS POWER COMPANY

It is understood and agreed that the policy is changed by the addition or deletion of the pages listed below.

| Page Numbers Of Pages Added | | Page Numbers Of Pages Deleted | |
|---|---|---|---|
| 5-C | 9 1 81 | --- | |
| 6-B | 9 1 81 | 6-B | 1 1 79 |

Nothing contained in this rider shall be held to alter or affect any of the terms of the policy other than as herein specifically stated.

IN WITNESS WHEREOF the ÆTNA LIFE INSURANCE COMPANY has signed this rider at HARTFORD, CONNECTICUT, to become effective September 1, 1981.

Signed by the Insurance Company   November 23, 1981.

*Karen M. Hillsberg*
Registrar

*Lewis R. Merwine*
Secretary

Signed by the Policyholder   January 7, 1982

Signature

Executive Vice President
Official Title

GR-23-R1
Ed. 9-'57

PLEASE EXECUTE AND RETURN THIS COPY TO
ÆTNA LIFE INSURANCE COMPANY

000072

EXHIBIT A

9981

Section 2.  Income Benefits

A.  If a period of total disability of an employee commences while the employee is in-
    sured hereunder and continues during and beyond the qualifying period and if proof
    of loss is furnished in accordance with Article VI, the Insurance Company shall,
    subject to the terms of this policy, pay a monthly benefit during the continuance
    of the period of total disability commencing with the first day following the com-
    pletion of the qualifying period.

    The amount of monthly benefit payable under this policy for a given monthly period
    shall be 60% of the employee's monthly rate of basic earnings if no other income
    benefits are payable for the given monthly period.

    If other income benefits are payable for a given monthly period, the amount of
    monthly benefit payable under this policy for the given monthly period shall be
    an amount equal to the excess, if any, of 60% of the employee's monthly rate of
    basic earnings over the amount of other income benefits payable for the given
    monthly period.

    In no event shall the amount of monthly benefit exceed $3,000.

000074

EXHIBIT A

COPY

Policyholder No. 322687

RIDER

ATTACHED TO AND MADE A PART OF GROUP POLICY NO. LTD-322687
A CONTRACT BETWEEN ÆTNA LIFE INSURANCE COMPANY AND THE POLICYHOLDER

CONSUMERS POWER COMPANY

It is understood and agreed that the policy is changed by the addition or deletion of the pages listed below.

| Page Numbers of Pages Added All Bearing 7 1 90 Date | Page Numbers of Pages Deleted | |
|---|---|---|
| 4 | 4 | 1 1 77 |
| 5 | 5 | 1 1 79 |
| 5-B | 5-C | 9 1 81 |
| 6-A | 6-A | 1 1 79 |
| 6-A (Continued) | 6-A(Continued) | 1 1 79 |
| 6-B | 6-B | 9 1 81 |
| 6-E | 6-E | 6 1 74 |
| 6-F | 6-F | 6 1 74 |
| 7 | 7 | 1 1 79 |

Nothing contained in this rider shall be held to alter or affect any of the terms of the policy other than as herein specifically stated.

IN WITNESS WHEREOF the ÆTNA LIFE INSURANCE COMPANY has signed this rider at HARTFORD, CONNECTICUT, to become effective, July 1, 1990.

Signed by the Insurance Company, July 5, 1990.

_Joyce Cunnane_
Registrar

_Lewis R Mervine_
Secretary

Signed by the Policyholder_____

_____        _____
            Signature                      Official Title

000075

EXHIBIT A

GR-23-R1
ED. 11-'76

Article I—GENERAL PROVISIONS (Continued)

## Section 2. List of Participant Employers

An Employer shall be eligible to be included in this list as a Participant Employer if such inclusion is not contrary to any applicable insurance law of the state or other jurisdiction in which this policy is delivered.

The Policyholder may act for and on behalf of any and all of the Employers included in this list in all matters pertaining to this policy, and every act done by the Policyholder, agreement made between the Insurance Company and the Policyholder, or notice given by the Insurance Company to the Policyholder or by the Policyholder to the Insurance Company, shall be binding on all such Employers.

Any eligible Employer may be added to this list as a Participant Employer only upon written agreement between the Policyholder and the Insurance Company and upon terms mutually agreeable to them.

An Employer shall be eliminated automatically from this list when this policy is discontinued with respect to employees of such Employer, as provided for elsewhere in this policy, but termination of an Employer's status as a Participant Employer shall not relieve such Employer from any obligations to the Insurance Company with respect to the time such Employer was a Participant Employer under this policy.

| Name of Participant Employer | Principal Location | Effective Date of Inclusion |
|---|---|---|
| Consumers Power Company | Jackson, Michigan | Date of Issue |
| Michigan Gas Storage Company | Jackson, Michigan | Date of Issue |
| Northern Michigan Exploration Company | Jackson, Michigan | September 1, 1974 |
| Plateau Resources Limited | Jackson, Michigan | January 1, 1977 |
| CMS Energy | Jackson, Michigan | July 1, 1990 |
| CMS Enterprises | Jackson, Michigan | July 1, 1990 |
| CMS Lanc | Jackson, Michigan | July 1, 1990 |
| CMS Brokering | Jackson, Michigan | July 1, 1990 |
| CMS VSI | Jackson, Michigan | July 1, 1990 |
| CMS Generation | Jackson, Michigan | July 1, 1990 |
| CMS Gas Transmission | Jackson, Michigan | July 1, 1990 |
| CMS Filer City | Jackson, Michigan | July 1, 1990 |

EXHIBIT A

Article I--GENERAL PROVISIONS (Continued)

Section 3.  Employees to be Insured

A. Employees Eligible:

The following class of employees shall be eligible for insurance under this policy:

All full-time Executive, Administrative and Professional Employees of a Participant Employer who have not reached the first day of the calendar month next following the date of attaining the age of seventy-four years, excluding, however, any employee permanently assigned to work outside of the United States and Canada.

For the purposes of this policy, a "full-time employee" is one who is regularly scheduled to work at least thirty-hours per week during his Participant Employer's work week.

Each employee in an eligible class shall become eligible for insurance on the date on which he completes one year of continuous service since the date he was last employed by a Participant Employer; provided, however, that each employee in an eligible class of Plateau Resources Limited, whose employment commenced on or before the date Plateau Resources Limited was included as a Participant Employer, shall become eligible for Employee Coverage on that date; provided further, however, that each other employee of Plateau Resources Limited shall become eligible for Employee Coverage on the day he becomes a member of the eligible class of employees.

Each employee in an eligible class who is an Officer, including an Assistant Officer, whose employment commences after March 1, 1973, shall become eligible for insurance on the later to occur of
(a)  March 1, 1975, or
(b)  the date on which he enters the service of a Participant Employer.
Provided, however, that the eligibility of an employee who is an officer or an Assistant Officer will cease upon coverage of the officer or Assistant Officer under a separate Long Term Disability policy provided in whole or in part by the Participant Employer. In the event the separate policy shall terminate for any reason whatsoever, and it is not replaced by another Long Term Disability policy, the employee shall again become eligible for coverage hereunder without additional proof of insurability, provided the employee elects to participate within 31 days of termination of the separate policy.

Anything to the contrary notwithstanding, if an individual is in the employ of or connected with two or more Participant Employers, he shall not be eligible for multiple coverage under this policy, but shall be treated the same as if he were in the employ of or connected with a single Participant Employer; the amount of insurance for which any such individual shall be eligible under this policy shall under no circumstances exceed the amount which would apply if all of the Participant Employers with which he is employed or connected were a single Participant Employer and if the aggregate of the remuneration being paid to him by all such Participant Employers were being paid to him by a single Participant Employer.

If any Participant Employer is a partnership, the natural-person partners thereof shall be considered to be employees within the meaning of this policy if and while they are actively engaged in and devoting their time on a substantially full-time basis to the conduct of the business of the partnership. If any Participant Employer is an individual proprietorship, the natural-person proprietor thereof shall be considered to be an employee within the meaning of this policy if and while he is actively engaged in and devoting his time on a substantially full-time basis to the conduct of the business of the proprietorship.

000077

Page 5

EXHIBIT A
7 1 90

*Section 4.  Changes in the Plan of Insurance*

The amendments to this policy which become effective on     July 1, 1990,     , shall not apply in respect of any benefits payable for a period of total disability, whether continuous or interrupted, which commenced on or before said date.

GR-33 LTD
Ed. 4-'66

000078

Page 5-B

7  1  90

40680

EXHIBIT  A

Article II--LONG TERM DISABILITY BENEFITS (Continued)

Section 1. Definitions (Continued)

(iv) the date the employee ceases to be under the care of a legally qualified physician;

(v) as to a period of total disability that commences prior to the date the employee attains the age of fifty-nine years, the end of the calendar month in which such employee attains the age of sixty-five years;

(vi) as to a period of total disability that commences on or after the date the employee attains the age of fifty-nine years, the expiration of the number of months of total disability (excluding the qualifying period), as determined from the Table below:

TABLE

Age at Time of Total Disability

| Years | Months | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| | Number of Months for Which Benefits Are Paid | | | | | | | | | | | |
| 59 | 63 | 62 | 61 | 60 | 59 | 58 | 57 | 57 | 56 | 56 | 55 | 55 |
| 60 | 54 | 54 | 53 | 53 | 52 | 52 | 51 | 51 | 50 | 50 | 49 | 49 |
| 61 | 48 | 48 | 47 | 47 | 46 | 46 | 45 | 45 | 44 | 44 | 43 | 43 |
| 62 | 42 | 41 | 41 | 40 | 40 | 40 | 39 | 39 | 39 | 39 | 39 | 39 |
| 63 | 39 | 39 | 39 | 38 | 38 | 38 | 37 | 37 | 37 | 37 | 37 | 37 |
| 64 | 37 | 37 | 37 | 37 | 36 | 36 | 36 | 36 | 36 | 36 | 35 | 35 |
| 65 | 35 | 35 | 35 | 34 | 34 | 34 | 34 | 34 | 34 | 33 | 33 | 33 |
| 66 | 33 | 33 | 33 | 33 | 32 | 32 | 32 | 32 | 32 | 32 | 31 | 31 |
| 67 | 31 | 31 | 31 | 31 | 30 | 30 | 30 | 29 | 29 | 29 | 28 | 28 |
| 68 | 28 | 28 | 28 | 28 | 28 | 28 | 27 | 27 | 27 | 27 | 27 | 27 |
| 69 | 26 | 26 | 25 | 25 | 25 | 24 | 24 | 24 | 23 | 23 | 23 | 22 |
| 70 | 22 | 22 | 22 | 22 | 21 | 21 | 21 | 21 | 21 | 20 | 20 | 20 |
| 71 | 19 | 19 | 18 | 18 | 17 | 17 | 16 | 16 | 15 | 14 | 13 | 12 |
| 72 | 11 | 10 | 9 | 8 | 7 | 7 | 6 | 5 | 4 | 3 | 3 | 3 |
| 73 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 | 3 |

(vii) the date of the employee's death.

(f) Any two separate periods of total disability which arise from the same or related causes and which are separated by less than six months of active work shall be considered as one period of total disability, except that the

000079

EXHIBIT A

Article II--LONG TERM DISABILITY BENEFITS (Continued)

Section 1.  DEFINITIONS (Continued)

(f) (Continued)

earlier of such separate periods shall not be taken into account if at the beginning of such earlier period the employee was not insured under this policy. Having combined two separate periods into a single period, the foregoing rule may be applied successively to any further separate period of total disability provided such further separate period of disability also arises from the same or related causes and is not separated from the last preceding such period by more than six months of active work. See item (g) below for an exception to this rule during the "qualifying period."

(g) "Qualifying period" means, as to any one period of total disability of an employee, the first 270 days of such period of total disability of the employee. Only one qualifying period is required with respect to those periods of total disability which are considered as one period of total disability under item (f). During the qualifying period, the period of active work which is required to establish a new period of total disability in item (f) shall be thirty-one days rather than six months.

(h) "Pre-existing Condition" refers to an injury or disease for which the employee received treatment or took prescribed drugs or medicine during the 3 months prior to eligibility to participate.

Article II—LONG TERM DISABILITY BENEFITS (Continued)

Section 2.  Income Benefits

A. If a period of total disability of an employee commences while the employee is
   insured hereunder and continues during and beyond the qualifying period and if
   proof of loss is furnished in accordance with Article VI, the Insurance Company
   shall, subject to the terms of this policy, pay a monthly benefit during the
   continuance of the period of total disability commencing with the first day
   following the completion of the qualifying period.

   The amount of monthly benefit payable under this policy for a given monthly period
   shall be 60% of the employee's monthly rate of basic earnings if no other income
   benefits are payable for the given monthly period.

   If other income benefits are payable for a given monthly period, the amount of
   monthly benefit payable under this policy for the given monthly period shall be an
   amount equal to the excess, if any, of 60% of the employee's monthly rate of basic
   earnings over the amount of other income benefits payable for the given monthly
   period.

   Effective for employees who become eligible for coverage on or after July 1, 1990,
   a monthly benefit will not be payable under this policy for the initial 12 months
   of coverage for any disability caused by, contributed to by or resulting from any
   preexisting condition, provided however, that this exclusion will not apply to an
   employee who becomes eligible for coverage as of July 1, 1990 solely because of the
   change in eligibility from two years to one year and/or the elimination of the
   minimum age requirement.

   In no event shall the amount of monthly benefit be less than $100 or exceed $7,500.

000081

EXHIBIT A
7 1 90

322687

Article II—LONG TERM DISABILITY BENEFITS (Continued)

Section 2-S.  Supplemental Income Benefits

A. If an employee has at some time qualified for monthly benefits under the terms of
Section 2 of this Article II, or under the prior plan, or under both, for a period
of at least fifty-one consecutive months and if, on the date he reaches Normal
Retirement Date, he meets at least one of the following requirements:

  (i) he is employed by a Participant Employer, or
 (ii) he is entitled to receive a monthly benefit under Section 2 of this Article
      II for the month in which he reaches Normal Retirement Date, or
(iii) he is eligible to receive a pension or annuity under his Participant
      Employer's formal Pension Plan;

the Insurance Company shall pay a monthly benefit to the employee during the
further continuance of the employee's total disability commencing with the calendar
month next following the calendar month in which the employee reaches Normal
Retirement Date. The amount of such monthly benefit shall be determined below.

No further proof of total disability shall be required of any employee entitled to
receive such monthly benefit.

B. The amount of monthly Supplemental Income Benefits payable to an employee shall be
an amount equal to the product obtained by multiplying (a) below and (b) below:

(a) the employee's "final pay";

(b) the sum of the percentages determined as follows:

   (i) 1 1/2% for each of the first 20 years of Total Service minus any years of
       Accredited Service not to exceed 20;
  (ii) 1% for each of the next 15 years of Total Service, minus any years of
       Accredited Service in excess of 20, but not to exceed 35.

No benefit shall be payable under this policy for any period attributable to the
number of years of Accredited Service, as defined in the Participant Employer's formal
Pension Plan.

The amount of monthly benefit, if any, payable under this section 2-S shall be that
portion of the employee's monthly benefit attributable to the number of years of
Disability Service.

In computing the sum of percentages under item (b) above, Accredited Service shall be
counted first, then Disability Service.

000082

EXHIBIT A

GR-73966-SMLTD

Page 6-E

7 1 90

Article II--LONG TERM DISABILITY BENEFITS (Continued)

Section 2-S.  Supplemental Income Benefits (Continued)

For the purposes of this section:

(a)  The term "final pay" means the employee's monthly rate of basic earnings at the commencement of the period of total disability increased or decreased each July 1 according to the change in the Consumer Price Index for the past 12 month period. However, in no event will a change be deemed to exceed 3% during any 12 month period and in no event will the "final pay" ever be less than the monthly rate of basic earnings in effect on the date the period of total disability commenced. If the July 1 next following the date of the commencement of the period of total disability is less than 12 months after the period of total disability commences, the adjustment will be based on the change in the Consumer Price Index for the period from the commencement of the period of total disability to the next July 1. No adjustment will be made for the period from the July 1 immediately prior to the attainment of Normal Retirement Age to the date that the employee attained Normal Retirement Age.

(b)  The term "Accredited Service" means the number of years of accredited service of the employee under his Participant Employer's formal Pension Plan at the beginning of the period of total disability.

(c)  The term "Disability Service" means the number of years, including any fractional part of a year, rounded to the nearest month, during the period of total disability of the employee. However, no Disability Service shall be accrued for any period of time during the period of total disability if the employee received Accredited Service under his Participant Employer's Pension Plan.

(d)  The term "Total Service" means the total number of years of Accredited Service and Disability Service.

(e)  "Normal Retirement Date" is the end of the month during which an employee attains the following age:

NORMAL RETIREMENT AGE

| Year of Birth | | Age |
|---|---|---|
| Years throuth | 1937 | 65 years |
| | 1938 | 65 years and  2 months |
| | 1939 | 65 years and  4 months |
| | 1940 | 65 years and  6 months |
| | 1941 | 65 years and  8 months |
| | 1942 | 65 years and 10 months |
| 1943 through | 1954 | 66 years |
| | 1955 | 66 years and  2 months |
| | 1956 | 66 years and  4 months |
| | 1957 | 66 years and  6 months |
| | 1958 | 66 years and  8 months |
| | 1959 | 66 years and 10 months |
| 1969 or later | | 67 years |

C.  The Insurance Company shall be entitled to rely upon the attestation of the Policyholder as to any fact pertaining to any Pension Plan of any Participant Employer.

000083

GR-73966-SMLTD                              Page 6-F

EXHIBIT A

Article III--TERMINATION OF INSURANCE

All insurance of any employee under this policy shall terminate at the earliest time specified below:

(1) Upon discontinuance of the policy.

(2) Immediately when the employee's employment with a Participant Employer in the classes of employees eligible for insurance terminates. Cessation of active work by an employee shall be deemed to be termination of his employment, except that

   (a) in the case of an absence from active work because of sickness or injury, his employment may, for the purposes of insurance under this policy, be deemed to continue until terminated by his Participant Employer, and

   (b) in the case of absence from active work because of temporary lay-off, his employment will, for the purposes of insurance under this policy, be deemed to terminate on the employee's last full day of active work prior to the commencement of the lay-off, and

   (c) in the case of absence from active work because of leave of absence, his employment will, for the purposes of insurance under this policy, be deemed to terminate on the employee's last full day of active work prior to the commencement of the leave of absence; provided, however, that an employee's employment may, for the purposes of insurance under this policy, be deemed to continue, during a leave of absence, pursuant to written mutual agreement between the Policyholder and the Insurance Company.

   In the case of any continuation of insurance in accordance with the foregoing items (a) and (c), the insurance under this policy for such employee shall automatically cease on the date of such termination of his employment by his Participant Employer, as evidenced to the Insurance Company by the Policyholder, whether by notification or by cessation of premium payment on account of such employee's insurance hereunder.

(3) The last day of the calendar month in which the employee attains the age of 74 years.

In no event may any insurance provided on a contributory basis be continued beyond the end of the period for which the employee has made to his Participant Employer the contributions required.

EXHIBIT A

7 1 90

# CIVIL COVER SHEET

Case3:08-cv-03628-PJH Document1-3 Filed 07/29/2008 Page 1 of 2

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

CARMEN Y. PULLEY,

**DEFENDANTS**

AETNA LIFE INSURANCE COMPANY;
CONSUMERS POWER COMPANY LTD PLAN

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

Alameda

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

SHERNOFF BIDART DARRAS ECHEVERRIA, LLP

3257 East Guasti Road, Suite 300

Ontario, CA 91761

(909) 390-3770

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Med. Malpractice | [ ] 625 Drug Related Seizure | 28 USC 157 | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability | [ ] 365 Personal Injury — | of Property 21 USC 881 | | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander | [ ] 368 Asbestos Personal | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Injury Product | [ ] 650 Airline Regs. | [ ] 830 Patent | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability | Liability | [ ] 660 Occupational | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| Student Loans | [ ] 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | [ ] 490 Cable/Sat TV |
| (Excl. Veterans) | [ ] 345 Marine Product | [ ] 370 Other Fraud | [ ] 690 Other | | [ ] 810 Selective Service |
| [ ] 153 Recovery of Overpayment | Liability | [ ] 371 Truth in Lending | | | [ ] 850 Securities/Commodities/ |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal | **LABOR** | **SOCIAL SECURITY** | Exchange |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | Property Damage | [ ] 710 Fair Labor Standards | [ ] 861 HIA (1395ff) | [ ] 875 Customer Challenge |
| [ ] 190 Other Contract | Product Liability | [ ] 385 Property Damage | Act | [ ] 862 Black Lung (923) | 12 USC 3410 |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury | Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt.Reporting | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| | | | & Disclosure Act | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 894 Energy Allocation Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | [X] 791 Empl. Ret. Inc. | [ ] 870 Taxes (U.S. Plaintiff | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ | **Habeas Corpus:** | Security Act | or Defendant) | Act |
| [ ] 240 Torts to Land | Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 900 Appeal of Fee |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 535 Death Penalty | | 26 USC 7609 | Determination |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities — | [ ] 540 Mandamus & Other | **IMMIGRATION** | | Under Equal Access |
| | Employment | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | to Justice |
| | [ ] 446 Amer. w/Disabilities — | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus – | | [ ] 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | [ ] 440 Other Civil Rights | | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

28 U.S.C. §§1331,1337 & 29 U.S.C.§1132(a),(e),(f) & (g) of 1974 Employee Retirement Income Security Act

Brief description of cause:

claim by Plaintiff for Disability benefits under an employee benefit plan regulated and governed under ERISA

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $
- CHECK YES only if demanded in complaint:
- JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

- [X] SAN FRANCISCO/OAKLAND
- [ ] SAN JOSE

DATE July 25, 2008

SIGNATURE OF ATTORNEY OF RECORD

, Frank N. Darras

C08-03628 PJH Adr

American LegalNet, Inc.
www.FormsWorkflow.com

COPY

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.     **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II.     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III.     **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV.     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V.     **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI.     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**          Example:          U.S. Civil Statute: 47 USC 553
                                                          Brief Description: Unauthorized reception of cable service

VII.     **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII.     **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

American LegalNet, Inc.
www.FormsWorkflow.com

AO 440 (Rev. 04/08)  Civil Summons

# UNITED STATES DISTRICT COURT

for the

Northern District of California

CARMEN Y. PULLEY,

Plaintiff
v.

AETNA LIFE INSURANCE COMPANY;
CONSUMERS POWER COMPANY LTD PLAN

Defendant

)
)
)
)
)

Civil Action No.

C08-03628 ADR
PJH

## Summons in a Civil Action

To: *(Defendant's name and address)*

1. AETNA LIFE INSURANCE COMPANY - 151 Farmington Avenue, Hartford, CT 06156

2. CONSUMERS POWER COMPANY LTD PLAN - PO Box, Lansing, MI 48937-0001

A lawsuit has been filed against you.

      Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, whose name and address are:

Shernoff Bidart Darras Echeverria, LLP
3257 East Guasti Road, Suite 300
Ontario, CA 91761

If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Richard W. Wieking
Name of clerk of court

Deputy clerk's signature

Date:  JUL 2 9 2008

*(Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States allowed 60 days by Rule 12(a)(3).)*

# ORIGINAL

American LegalNet, Inc.
www.FormsWorkflow.com

## Proof of Service

I declare under penalty of perjury that I served the summons and complaint in this case on ______________________,
by:

(1) personally delivering a copy of each to the individual at this place, ______________________________
________________________________________________________________; or

(2) leaving a copy of each at the individual's dwelling or usual place of abode with ______________________
who resides there and is of suitable age and discretion; or

(3) delivering a copy of each to an agent authorized by appointment or by law to receive it whose name is
______________________________________________________; or

(4) returning the summons unexecuted to the court clerk on ________________; or

(5) other *(specify)* ____________________________________________________________
____________________________________________________________
____________________________________________________________.

My fees are $ ______________ for travel and $ ______________ for services, for a total of $ 0.00.

Date: ____________________

____________________________________
Server's signature

____________________________________
Printed name and title

____________________________________
Server's address

American LegalNet, Inc.
www.FormsWorkflow.com